## LOVEJOY v. LOVEJOY*
(No. 1264; May 17, 1927; 256 P. 76.)

DIVORCE—DIVISION OF PROPERTY—DISCRETION OF COURT IN DIVISION OF PROPERTY — DIVISION NOT DISTURBED EXCEPT ON CLEAR GROUNDS.

1.  Under Comp. St. 1920, § 5000, providing that in granting a divorce the court shall also make such disposition of the property of the parties as shall appear just and equitable, and section 5004, in granting a divorce court may dispose of property which is wife's separate property, under Married Women's Act.

2.  Proper division under Comp. St. 1920, § 5000, providing that on divorce court shall make just and equitable disposition of property, satisfies wife's rights under section 5004, providing that wife shall have all or a just and reasonable part of personal property that came to husband by marriage.

3.   Under Comp. St. 1920, §§ 5000, 5004, in dividing property on divorce trial court need not make an equal division, but may exercise its discretion.

4.   The trial court being in a better position to judge the merits and needs of parties to divorce than appellate court, trial court's division of property should not be disturbed except on clear grounds.

5.   Where on marriage husband had 320 acres of land and a few shares of stock in a local telephone company, and wife had $2,000 and shortly obtained $1,000 more by inheritance, which was freely used, on divorce some 22 years later, wife, who secured the divorce, *held* entitled to unprofitable 640-acre ranch worth some $17.50 per acre and property thereon and husband to other part of property, consisting of 86 shares of stock in local telephone company of which he was manager, worth some $25 per share.

*See Headnotes: (1) 19 CJ p. 331 n. 97; p. 332 n. 14. (2) 19 CJ p. 333 n. 28 New. (3,4) 19 CJ p. 334 n. 49; p. 340 n. 56 New. (5) 19 CJ p. 334n.50.

APPEAL from District Court, Lincoln County; JOHN R. ARNOLD, Judge.

Divorce action by Fred Lovejoy against May S. Lovejoy, who brought a cross-action. From a decree granting a divorce to defendant and dividing the property, defendant appeals.

*M. A. Kline,* for appellant.

The decree rendered below, as to division of property, was unfair to appellant and not supported by the evidence; appellant's separate property, owned at the time of marriage, should have been retained by her; Section 4974 C. S. At least one-half of the joint accumulations, during coverture, should have been decreed to appellant; Van Gorder v. Van Gorder, 129 P. 226; Ressor v. Ressor, 82 Ill. 442; Currie v. Currie, 216 P. 1083. In the case last cited, the court restored to the divorced wife all of her separate property and decreed to her an equal share of

the community property; to the same effect is the decision in the case of Silva v. Silva, 197 P. 165.

*P. W. Spaulding,* for respondent.

The statute, governing the division of property in divorce actions, is Section 5000 C. S.; its provisions were construed in Closson v. Closson, (Wyo.) 215 P. 485; the trial court has a broad discretion in adjusting rights growing out of the marital relation; a careful review of the evidence, as to the nature of the property accumulations of the parties during their married life, will show that the division made by the trial court, was fair and reasonable, in fact appellant received a much greater share of the property than is justified by the decision in Van Gorder v. Van Gorder, 44 L. R. A. (N. S.) 999; see also cases in editorial note at page 1010.

*M. A. Kline,* in reply.

Appellant admits that Sections 5000 and 5004 C. S. apply to property divisions on divorce; Section 4974 C. S. relates to the separate property of married women; Section 5000 C. S. relates to community property and not the separate property of the wife; all parts of a statute must be construed together; Southerland, (2nd Ed.) 380; State v. Mitchell, (Kan.) 33 P. 104. The terms of local statutes govern; Closson v. Closson, 30 Wyo. 1. Appellant was granted a divorce on her cross-petition; the conduct of respondent, as disclosed by the evidence, fully supports the decree granted on appellant's cross petition; appellant had at least $4,000 of her own in the community property; the division made to the wife, especially in the form of ranch property, remote from railroad communication, was unfair.

KIMBALL, Justice.

This is a divorce action commenced by Fred Lovejoy, plaintiff, against May S. Lovejoy, defendant. The defendant filed an answer and cross-petition. The decree of the

district court granted the defendant a divorce on the ground of desertion and made a division of the property of the parties. The defendant has appealed complaining of that part of the decree that divides the property.

The parties live in Teton County which formerly was a part of Lincoln County. They were married in 1905, each then being about 35 years of age. At the time of marriage the plaintiff owned 320 acres of patented land, 160 acres of which had been acquired under the homestead law, and 160 acres acquired under the desert land act. At that time, he probably owned also a few shares of stock in the Jackson Valley Telephone Company, a small neighborhood company that operates a telephone line that serves about 80 patrons. The value at the time of marriage of the property then owned by plaintiff was not shown. The defendant testified without serious dispute that when married she had $2000 in money, and that a short time after marriage she obtained $1000 more by inheritance. The parties lived together for fourteen years—until May, 1919, when they separated. They have no children. During their married life, the plaintiff has been the manager of the telephone company at an average salary of about $75 a month. We understand that his duties as manager require that he personally shall do most of the work necessary in the operation, repair and upkeep of the telephone lines. The plaintiff has also earned some money by acting as guide for tourists. The defendant at times did office work for the telephone company, and for 8 months or more taught school. By their joint efforts the parties have operated a ranch business upon the land held by plaintiff at the time of marriage and other lands acquired during marriage. Both plaintiff and defendant have worked on the ranch, the defendant often doing a man's work in addition to her housekeeping tasks. It is pretty clear that the ranch business has never produced any considerable income, although, no doubt, the property has increased in value by addi-

tions and improvement. The money that the defendant had at the time of marriage, as well as all moneys acquired by both plaintiff and defendant since the marriage, has been used in the expenses of the family, in expenses and improvements of the ranch property, and in obtaining other property.

They have acquired 320 acres more of land—280 acres patented to the defendant under the desert land act, and 40 acres taken with scrip and patented to the plaintiff. The land acquired by plaintiff before marriage and that acquired by both since marriage, 640 acres in all, is in a compact body, and, so far as we can tell from the evidence, has been improved and operated as one ranch enterprise. Ditches for irrigation have been constructed, and a part of the lands have been cultivated. The ranch buildings are all on the 160 acres acquired before marriage by plaintiff under the homestead law. A few head of cattle bought soon after marriage have increased to some 50 or 60 head. The parties bought more shares of stock in the telephone company, until they have 86 shares —64 in the name of the plaintiff and 22 in the name of the defendant. The total outstanding stock of the telephone company is only about 130 shares, so that plaintiff and defendant together have much more than a majority interest.

They have also acquired in the husband's name four or five town lots in the town of Jackson, worth about $100 each, and a share of bank stock supposed at the time of trial to be worth $100.

There was much testimony as to the amounts contributed by each party in the purchase of property during coverture. We do not think it necessary to discuss this testimony, but will say that there seems to be no doubt that the wife's funds were freely used in acquiring much of the property disposed of by the decree.

When the parties separated in May, 1919, they signed a writing, dated May 5, 1919, which seems to have been

made in contemplation of a divorce action to be commenced by the wife. The writing recites that the plaintiff agrees to transfer to the defendant all his "rights, title and interest to all the ranch property, livestock and ranch equipment now possessed by them jointly;" that the defendant agrees to transfer to the plaintiff all her rights, title and interest in the telephone company, and that the defendant should make no claim on the plaintiff for alimony "or further claim of any kind."

Since the separation on the making of the above agreement, the parties have continued to live apart. The defendant took possession of all the ranch property as contemplated by the agreement, and for four years, until the trial of this action in 1923, has managed and operated the ranch without assistance from plaintiff; but the agreement of May, 1919, was never fully carried out. The defendant did not bring an action for divorce except by cross-petition in this action, and the transfers of property were not made.

The plaintiff commenced this action in July, 1922. In his petition he did not ask for a division of property, but alleged that "the parties hereto made a settlement and division of their property between themselves on May 5th, 1919."

The defendant in her answer set forth the said agreement, but alleged that it was collusive, fraudulent, opposed to public policy, and void; and that it was never carried out.

The plaintiff in his reply alleged that the agreement was not collusive or fraudulent; "that on the contrary the said agreement was freely and voluntarily entered into and its terms and conditions were and are in all things fair and just to the defendant and not against public policy," and that plaintiff "has at all times been ready and willing and is now ready and willing and able to do and perform all things required of him by said agreement to be done and performed and is willing so to

do when and if the said defendant does and performs the things required of her by said agreement to be done and performed."

At the trial, the defendant contended, not only that the agreement of May, 1919, was void because opposed to public policy, but that in entering into it she had been overreached. She claimed that the ranch property, under the conditions then existing, could not be made to pay expenses. It is admitted that during the four years since the separation while she, unassisted, managed and operated the ranch, she became indebted in the sum of $3400. She claimed that all of this amount had been used in supporting herself and in keeping up the ranch. The plaintiff claimed that much of the borrowed money was used by defendant in taking trips. However that may be, the indebtedness is there, and there is no substantial evidence to show that the defendant was wrong in her assertion that for four years she has been unable to make the ranch pay the expenses of running it, and it was not claimed that the plaintiff during that time contributed anything toward the defendant's support.

In dividing the property, the district court awarded defendant 480 acres of land which includes her 280-acre desert entry, the plaintiff's 160-acre desert entry, and the 40 acres taken with scrip. Under the decree, she takes also the livestock and ranch machinery, and the right to use and occupy plaintiff's 160-acre homestead until October, 1924. She remains liable for the $3400 indebtedness incurred since 1919, and receives nothing by way of alimony. The plaintiff was awarded all the other property, including the telephone stock held in defendant's name, and the 160-acre homestead on which are situated all the ranch buildings.

The evidence of value, both as to the real estate and as to the telephone stock, is not at all satisfactory. There was some evidence, not directly contradicted, that the land was worth from $17.50 to $20.00 an acre, but it was shown

that there had been no sales of land of that character in that vicinity for three or four years. The telephone stock is of the par value of $50 a share, and the plaintiff testified that its actual value was about $25 a share, but there was evidence of purchases by plaintiff at par. Taking the land as worth $17.50 an acre, and the telephone stock as worth $25 a share, it is readily seen that the defendant has received by decree more than half of the property. Each party, however, was anxious to receive the telephone stock instead of the ranch property. This is explained, perhaps, by what we have said as to the unprofitable operation of the ranch and the lack of a demand for that kind of property, and by the fact that the ownership of the telephone stock seems to have been considered by the parties as carrying with it the right to a salaried position as manager of the company.

Upon the general proposition, argued with much force by counsel for defendant, that the trial court erred in refusing to award to defendant the telephone stock instead of ranch lands, we must hold against the defendant. We think the trial court was justified in believing that the telephone stock was of greater value to plaintiff than it would be to defendant. As the majority stockholder, the plaintiff may continue indefinitely to hold the position of manager of the company. The defendant, if awarded the stock, might be disappointed in her hope that she could obtain and satisfactorily fill that position. Some of the duties of the position, such as making repairs on the line, she might be unable to perform. The trial court was justified in finding that the defendant was as well qualified as the plaintiff to operate the ranch. She had had ample experience in that business, and did not claim that she was not qualified.

The defendant questions the right of the court to award to the plaintiff property which, under the married women's act, was her separate property, referring to the telephone stock that had been purchased by the defendant.

Section 5000, Wyo. C. S. 1920, provides:

"In granting a divorce, the court shall also make such disposition of the property of the parties, as shall appear just and equitable, having regard to the respective merits of the parties and to the condition in which they will be left by such divorce, and to the party through whom the property was acquired, and to the burden imposed upon it, for the benefit of the wife and children, and the court may also decree to the wife reasonable alimony out of the estate of the husband having regard for his ability, and to effectuate the purposes aforesaid, may order so much of his real estate or the rents and profits thereof, as is necessary to be assigned and set out to the wife for life, or may decree a specific sum to be paid by him to her, and use all necessary legal and equitable processes to carry its decrees into effect."

The defendant says the statute, in authorizing a disposition of the "property of the parties," refers only to property held jointly or in common, and does not authorize the disposition of the wife's separate property. We are of opinion that the interpretation contended for cannot be given the statute, but that the court is authorized to dispose of separate as well as joint property. Our view finds support in decisions under a similar statute in Washington. Webster v. Webster, 2 Wash. 417, 26 Pac. 864; Budlong vs. Budlong, 43 Wash. 423, 86 Pac. 648; Folsom v. Folsom, 106 Wash. 315, 179 Pac. 847.

Our attention is called to Section 5004, which declares that:

"Whenever the nullity of a marriage or divorce from the bonds of matrimony for any cause except that of adultery committed by the wife, shall be decreed, the wife shall be entitled to the whole or such part as to the court shall seem just and reasonable, of the personal estate that shall have come to the husband by reason of the marriage, or the court may award her the value thereof, to be paid by her husband in money."

The authority under Section 5000 to make a just and equitable division of all the property of the parties having regard, among other things, to the party through whom the property was acquired, is not limited. by anything contained in Section 5004. It may be doubtful whether, in view of the married women's act, it can be said that there is any personal estate that "comes to the husband by reason of the marriage." See Dillon v. Starin, 44 Neb. 881, 63 N. W. 12. We need not decide that point in this case. If the plaintiff had property that had come to him by reason of the marriage, that was a circumstance to be considered in making a division under Section 5000, whether the court was looking to that section alone or in connection with Section 5004. The court was not required by Section 5004 to restore to the wife all the property that came to the husband by reason of the marriage, but only such part as seemed just and reasonable. If the division be "just and equitable" under Section 5000, the wife no doubt will receive what is "just and reasonable" under Section 5004.

It is conceded that in making a division of property under the statute the trial court exercises a discretion. There are no hard and fast rules to control its action. The statute does not require an equal division. A just and equitable division is as likely as not to be unequal. The decision of the trial court should not be disturbed, except on clear grounds, as that court is usually in a better position than the appellate court to judge of the respective merits and needs of the parties. It is therefore with some hesitation that we have come to the conclusion that the decree in this case must be modified.

The property of these parties seems naturally divided into two parts. One part, the property incident to the ranch enterprise. The other, the rest of the property, consisting mostly of the interest in the telephone company. The parties themselves recognized this division by their agreement of May, 1919, which we think we may

refer to for our present purpose, although it may have been void and not binding on the court. The plaintiff always insisted that the agrement was valid, and alleged that it was fair to the defendant. As the result of the agreement, the defendant had the sole burden of the ranch enterprise for four unprofitable years. From a reading of the evidence we get the impression that the important issue at the trial was whether the plaintiff or defendant should have the telephone stock. There seems to have been no suggestion in the evidence that the ranch lands should be divided. Yet, by the decree, the plaintiff retains out of those lands the tract on which all the buildings are located. We think this was error that should be corrected. The plaintiff is in no position to object if, in dividing the property, we accept the standard set by the agrement of May, 1919, especially after he for four years has been relieved of the duty of supporting his wife while she was becoming involved in debt. Under all the circumstances disclosed by the record, including the agreement of May, 1919, and the plaintiff's pleadings with reference to that agrement, we are of opinion that, if the plaintiff is to have what he claims was fairly agreed upon, the defendant should have the whole of the ranch property, including the land and improvements awarded to the plaintiff by the decree appealed from. The plaintiff calls our attention to defendant's testimony that the ranch buildings were out of repair and of little value, but if that be a fact, it seems of no great force as a reason for giving the husband the 160-acre tract on which the buildings are located.

It will be ordered that the judgment of the district court be modified by awarding to the defendant the land embraced in the plaintiff's homestead entry; and as so modified the judgment will be affirmed.

*Modified and Affirmed.*

BLUME, Ch. J., and POTTER, J., concur.