OCTOBER TERM, 1946

---

ELEANOR F. CRAWFORD,
　　　　　　*Plaintiff and Appellant,*
vs.
CARL L. CRAWFORD AND DONIS SHIRLEY KLE-
PINGER,
　　　　　　*Defendants and Respondents.*

(No. 2344; January 28th, 1947; 176 Pac. 2d 792)

2

For the plaintiff and appellant there was a brief and oral argument by R. G. Diefenderfer of Sheridan, Wyoming.

For the defendants and respondents there was a brief and oral argument by William D. Redle of Sheridan, Wyoming.

4

## OPINION

RINER, Chief Justice.

This cause is here through a direct appeal by Eleanor F. Crawford, the plaintiff below, from a judgment of the District Court of Sheridan County, which awarded her a divorce from the defendant, Carl L. Crawford, in this court and directed a disposition of property as between these parties. The judgment was entered October 8, 1945. There is no criticism made on the present appeal that the action of the District Court was improper in granting the divorce but the gravamen of this proceeding appears to be that the property settlement, so far as the plaintiff is concerned, was quite erroneous and in violation of the rules prescribed by the statutory law of this State as interpreted by the decisions of this court thereunder.

The controlling statute is, of course, section 35-118 W. R. S. 1931 which reads:

"In granting a divorce, the court shall also make such disposition of the property of the parties, as shall appear just and equitable, having regard to the respective merits of the parties and to the condition in which they will be left by such divorce, and to the party through whom the property was acquired, and to the burdens imposed upon it, for the benefit of the wife and children, and the court may also decree to the wife reasonable alimony out of the estate of the husband having regard for his ability, and to effectuate the purposes aforesaid, may order so much of his real estate or the rents and profits thereof, as is necessary to be assigned and set out to the wife for life, or may decree a specific sum to be paid by him to her, and use all necessary legal and equitable processes to carry its decrees into effect."

Construing this language this Court in Lovejoy vs. Lovejoy, 36 Wyo. 379, 256 Pac. 76 remarked:

"It is conceded that in making a division of property under the statute the trial court exercises a discretion.

There are no hard and fast rules to control its action. The statute does not require an equal division. A just and equitable division is as likely as not to be unequal. The decision of the trial court should not be disturbed, except on clear grounds, as that court is usually in a better position than the appellate court to judge of the respective merits and needs of the parties."

This view was subsequently reiterated in O'Day vs. O'Day, 47 Wyo. 22, 30 Pac. 2d 488 and in Garman vs. Garman, 59 Wyo. 1, 136 Pac. 2d 517.

Briefly reviewed, the facts to be considered here appear to be substantially these:

The plaintiff, Eleanor F. and defendant, Carl L. Crawford were married at Whiting, Indiana on August 22, 1942. At that time she had one unmarried daughter, Marcia by a former marriage. He also had been married before and had three daughters by that union, one married, Donis Shirley Klepinger, the other defendant in this action and one Phylis and another whose name is Peggy, as we understand the record. Whether either Phylis or the other daughter were married or not the record does not seem to make clear.

At the time of his marriage, the defendant had a house in Sheridan, Wyoming subject to a $3500 judgment in favor of his former wife, June, which was payable to her at the rate of $60 per month under the divorce decree awarded the lady last mentioned. This Sheridan city property rented for $40 a month. The wife Eleanor knew of this situation at the time of her marriage to Carl. He also owned at that time a tract of land of some 560 acres located in Sheridan County, Wyoming which was thereafter by deed dated June 6, 1944, recorded June 9, 1944, transferred to his daughter Donis. He also held a lease which he had had for a number of years on another piece of real estate located near the real estate last mentioned, consisting of 80 acres and which will be hereinafter usually re-

ferred to as the "Benham 80", Carrie T. Benham being the lessor. This last mentioned tract is, to use the language of the plaintiff as a witness on the trial of the case, "the entrance to the gorge through which you would have to go to get to the other property", i. e. the 560 acres above mentioned, and one must therefore cross this 80 acre tract in order to reach the larger piece of land. However, it seems there is a county road across this 80 which gives access to the 560 acre tract. The Benham 80 had been used by Mr. Crawford for many years in the past in connection with the larger acreage aforesaid before he met or married Eleanor and he had planned to continue so using the smaller tract with these other lands in the future. The lease thereon mentioned above contained an option to purchase this 80 acre tract for the sum of $1,000 which option Carl had also secured several years prior to meeting Eleanor. The lady never lived in the house in Sheridan nor on the 560 acre tract, nor aided in the accumulation of these properties for her husband. Early in 1941, Crawford had acquired for his oldest daughter, Phylis, 130 acres of land also in the vicinity of these other pieces of real estate already referred to intending to handle all three tracts so as to constitute a "modest dude ranch". Crawford never held title to the 130 acres ,the deed for this land having been made directly to Phylis. His income, including the house rent aforesaid, amounted to about $400 per month. Aside from the rental money his income was derived from $185 base pay as an instructor and officer in the U. S. Navy and the remainder thereof came to him through the National Guard.

When the marriage occurred which is involved in this litigation, Eleanor was 40 years old. The record does not seem to disclose Carl's age at that time but he had been an instructor in the Sheridan High School for some years and had obtained leave of absence for

work as an instructor in the U. S. Navy. His salary when he left the school was about $2,360 per year and his oldest daughter had attained her majority. Prior to this last venture of hers in marriage, Eleanor had been employed in Chicago, Illinois as probation officer for one of the juvenile courts there and had been earning about $200 a month in that position. In connection with this work she was entitled to an interest in a pension fund. She also had certain insurance policies and "four rooms of furniture" including a piano. On June 16, 1942 she withdrew from her work in the juvenile court aforesaid. With part of the proceeds received from the pension fund, $300, from the cashing of an insurance policy, $263, and $200 from the sale of the piano together with certain other funds—how much does not appear—supplied by Carl, additional furniture was purchased to the extent of some $500, all of which she now has. He seems to have paid out $127 freight charges in bringing this furniture in her possession to Sheridan for her and which sum she appears to have agreed might be deducted from any property settlement made in her favor.

After their marriage, the Crawfords commenced housekeeping at Grosse Ile, Michigan where he was stationed in his official capacity in the Navy. She kept a few roomers and boarders in the large house in which the couple lived then. The earnings of both husband and wife were placed in a joint bank account. The rent from the Sheridan house property aforesaid also was deposited in this account and the current expenses of the family were met by payments therefrom. Some time after the marriage, Mrs. Crawford received the sum of $1,895.64 from her father's estate which was likewise placed in this joint account. A thousand dollars of this sum was subsequently used to take up the option held by Crawford on the Benham 80 as hereinbefore related and a deed for it was made from the

owner, Carrie T. Benham, to the Crawfords jointly, this instrument being dated March 31, 1943 and filed for record April 28 of that year in Sheridan County. The sum of $174 appears to have been withdrawn from this joint account of the parties to pay premiums on Mrs. Crawford's personal life insurance policies which were procured and held by her prior to her marriage with Carl. The sum of $225 was also withdrawn from this joint account for the purpose of purchasing bonds which were thereafter cashed and the money returned to the joint account. From May, 1944 to and including April, 1945, Crawford paid his wife for her support and that of her daughter Marcia the sum of $110 a month. After that time nothing was paid. The parties separated and ceased to cohabit about July 1, 1944, the husband leaving the home then after they had lived together a little over one year and ten months, although they apparently could not get along in matrimonial bonds satisfactorily many months before their actual separation. During the time they maintained their home in Michigan, Crawford also supported Marcia, the unmarried daughter of his wife Eleanor, though he never adopted her.

About the first of August, 1944, Eleanor came to Sheridan where she worked in different places until the summer of 1945 when she and Marcia went to live in a cabin on the Benham 80 the first of June, thereby relieving her of the necessity of paying any rent which she would have been obliged to pay if she had remained in the city of Sheridan. Eleanor rented other cabins located on the place and according to her testimony expended thereon $176.34 and derived income to the extent of $24. In September, 1945, she obtained employment as a teacher in one of the Sheridan County schools and from that position received an annual salary of $1,260. She instituted this action for divorce and division of property August 21, 1945 and as al-

ready recited the judgment of the District Court of Sheridan County was entered therein October 8, 1945.

Upon this record which in many places is far from clear and presents a more or less involved financial status of the two interested parties and which we have in substance endeavored to outline as given above, the trial court's disposition of the cause was as follows:

Eleanor was granted a divorce from Carl Crawford on the ground of desertion. The court found that she had contributed to the marriage relation the sum of $2,648.64; that she had been benefited financially thereby to the extent of $313.50 being one half of the value of the furniture purchased by the parties from her and her husband's funds, plus the freight charge paid by him, and also to the extent of $174 paid for premiums on her personal life insurance policies; that accordingly her husband Carl should pay her the sum of $2,161.-14; that she should be paid by him also the sum of $25 per month for the five months May to September, 1945 inclusive or the total sum of $125 as current alimony; that she should also receive $50 for expenditures she had made on the Benham 80 and attorney's fees in the sum of $150, a total of $2,486.14; that this sum should be chargeable against the amount of $2500 remaining, evidently, from the sale of the Sheridan city house property after the judgment obtained by Crawford's former wife, June, had been satisfied and in which, as recited above, Eleanor had no interest so far as aiding in accumulating the property is concerned. The court also found that the Benham 80 should be set over to Carl and that Eleanor have no interest in any other property of the two defendants in this case. The judgment now questioned here was entered in accord with these findings and it was decided that the plaintiff should take nothing by her petition as against the defendant Donis Shirley Klepinger. The

costs of the litigation were also made chargeable to the defendant husband.

It seems reasonably apparent that the trial court endeavored so far as possible to place the parties back in about the same status as existed before their matrimonial misadventure. Having in mind the rule heretofore established by this court in such matters as has been above set forth, we can not see from our examination of the record that the action of the District Court was clearly unjust and inequitable.

Other courts of authority have substantially so ruled in similar matters under rather similar laws governing the disposition of property in connection with divorce actions and where much larger amounts of property were involved and owned by the husband who was decreed to be at fault.

In Polak vs. Polak, 248 Wis. 425, 22 N. W. 2d 153, a case decided as recently as March 12, 1946, the plaintiff husband sought a divorce from the defendant wife who counterclaimed praying a divorce from him on the ground of cruel and inhuman treatment. At the time of the marriage the husband owned real estate of the value of some $20,000, had no dependents, was in good health, and possessed a substantial income. He was held responsible for the termination of the marriage relationship. The parties had been married when the separation occurred, a comparatively short time. Holding that a total award to the wife of $2,200 including attorney fees of $700 should be affirmed, the court said:

"It has frequently been held in this state that the division of property in such cases as this is a matter peculiarly within the discretion of the trial court, and that its determination must prevail in the absence of mistake or some manifest error respecting the detailed facts on which it rests, or disregard of established

guides, amounting to a pretty clear want of judicial discretion or judgment. Gauger v. Gauger, 1914, 157 Wis. 630, 147 N. W. 1075. Here the parties lived together less than a year, and the wife did not in any way assist in the accumulation of the plaintiff's property. The defendant receives the household goods purchased at or about the time of the marriage, for which approximately $400 was paid, and receives $1,100 in cash. In addition to this attorneys' fees of $250 for services in the trial court and $450 for services and expenses on this appeal were also allowed. The attorneys' fees in the trial of the case and on appeal may properly be considered by the trial court in determining the amount of award to be made in a divorce action. Lewis v. Lewis, 1930, 201 Wis. 343, 230 N. W. 77.

"In making a final division of property between the parties to a divorce action the question is 'What is fair and equitable?" Under all the circumstances it is considered that under the decisions in Steinbach v. Steinbach, 1929, 200 Wis. 208, 227 N. W. 879; Bruhn v. Bruhn, 1928, 197 Wis. 358, 222 N. W. 242; Kalbakken v. Kalbakken, 1929, 199 Wis. 501, 227 N. W. 11, the division of property made by the trial court was fair and equitable and should not be disturbed."

The Steinbach case referred to in the excerpt just quoted was one where the wife sought a divorce from her husband. At the time of trial the parties were sixty-six years of age and they had lived together but two years after their marriage. She had been married twice and the defendant once before this marriage occurred. There was no gross mistreatment of the plaintiff by the defendant and such misbehavior on his part as there was, was not without provocation. Plaintiff had not assisted in accumulating any of the defendant's property which was found to be worth $19,-266 after deducting debts. The wife at the time of her marriage had left some $700 from alimony granted her upon the divorce from her second husband. Modifying and reducing an award in favor of the wife as made by the trial court to the extent of $3,300 to the

sum of $1,500, the Supreme Court of Wisconsin used this language:

"The division is not a problem in fractions. In every case all the circumstances must be considered, including the separate estate of the wife. The question always is: What should the wife receive, under the circumstances, in view of what she already has and what will remain to the husband after division? We appreciate that there is sometimes a wide latitude between the extremes of allowance, and that between these extremes the allowance is in the discretion of the trial judge. However, in view of the special facts that the parties had lived together so short a time, that the wife did not at all assist in the accumulation of the husband's property, that she had some property of her own, and all the circumstances, we consider that $1,500 is a sufficient allowance in this case."

No, the problem is not one in mathematics exclusively nor is it a question of what this court might think should be done in the case, viewing only the cold record divested of the living testimony of the parties and their demeanor before the District Court. Whether there exist "clear grounds" (Lovejoy vs. Lovejoy, supra) upon which we can say that that court abused the wide latitude of discretion reposed in it in such matters is the point to be decided here.

The trial judge in this cause saw and heard the parties testify as both husband and wife were each witnesses in their own behalf. He was in a far better position than we are to judge what under all the circumstances appearing in the case was a fair and equitable division of the property of the parties and we are obliged to conclude that we should not interfere with the judgment rendered and it is accordingly affirmed.

*Affirmed.*

KIMBALL, J., and BLUME, J., concur.