ANNA WILLIAMS,

*Plaintiff and Respondent,*

vs.

HAYDN F. WILLIAMS,

*Defendant and Appellant.*

(No. 2463; May 22, 1951; 231 Pac. (2d) 965).

176

For the defendant and appellant the cause was submitted upon the brief and also oral argument of Mr. Albert E. Nelson of Rock Springs, Wyoming.

For the plaintiff and respondent the cause was submitted upon the brief of W. A. Muir and Walter J.

Muir both of Rock Springs, Wyoming, and oral argument of Mr. W. A. Muir.

## OPINION

RINER, Justice.

Anna Williams, as plaintiff brought suit in the District Court of Sweetwater County against Haydn F. Williams defendant and appellant herein for a divorce alleging that he has offered the plaintiff such indignities as to "cause and render her condition intolerable as the wife of defendant." This allegation the defendant in his answer denied and by cross petition sought a

divorce from her on substantially the same statutory grounds as she asserted against him viz: that she "offered such indignities to him as rendered his condition intolerable."

These parties were married the first time May 29th, 1929, while Anna was living at home with her mother. This marriage was a secret one which took place in Pocatello, Idaho. He also was living at this time with his mother. This marriage did not "take" at all. Anna tried, as she testified, a number of times to talk to him but he ignored her and refused to have anything to do with her and she did not see him at all after they returned to Rock Springs. On one occasion when she undertook to talk to him over the telephone he told her she had the wrong number and stopped the conversation by hanging up the instrument. Subsequently she had the marriage announced in the local Rock Springs paper, and thereafter asked for and obtained a divorce from Haydn on November 10, 1931. He failed to appear in court in connection with that proceeding. At that time Haydn was a machinist employed at the Union Pacific Coal Company's machine shop.

After this first divorce proceeding Anna continued to work for the Union Pacific Coal Company during a period of some fourteen years until May 29, 1945, when these same parties were married a second time, the mothers of both of them having passed away. Anna was then earning in her work with the Coal Company the sum of $300.00 per month. That salary she gave up after this marriage quitting work June 1st, 1945. This action was taken upon Haydn's special request that she do so. He, at that time, had become foreman of the Union Pacific Coal Company machine shop and was earning each year a gross salary of $5,000.00; less income tax of $750.00. Haydn never arranged for a home for himself and his wife, but the parties lived in a house

on B street in the City of Rock Springs, Wyoming, which was owned by Anna and which she had inherited from her mother. In November 1947 they moved to another of her mother's properties and which Anna had also inherited. This was the so-called Pine Street property.

On December 8th, 1947, they opened a little store on these premises on Pine Street. His cousin Margaret came to visit them. Her visit seems to have upset defendant in some way so far as Anna was concerned. The record is far from clear on this point. On Christmas day he refused to talk to Anna but did talk to the cousin. After that Haydn without explaining to Anna what was the trouble refused to speak to his wife, and, as she stated: "just ignored her." He would come to the home, dress and then leave. Though she prepared his meals for him he would not eat them. Instead he just went downtown and obtained his meals there. That behavior continued until the morning of January 6th, 1948. She came into the kitchen that morning and he told her to "get out," until he had finished his breakfast. When she refused he took hold of her and pushed her into another room. He also refused her offer to take him to his work and to bring him back again in the automobile, which she owned. He also declined to allow her to have this car for use as she needed it. She told her adopted brother, John Baird, who was living with them in their home at the express invitation of both plaintiff and defendant, what had happened, whereupon the brother came back into the room where defendant was eating his breakfast and told the latter not to strike his sister and threatened him with violence if he did so. The defendant in his cross petition claims that he could not get along with the brother asserting him to be of a quarrelsome disposition and that he frequently became intoxicated. Haydn claimed as a conse-

quence that he (defendant) was forced to leave the home. The defendant testified to the brother's actions but the court evidently did not put much credence in his testimony. That same evening January 6th, 1948, when Haydn returned to their home after he had finished his work for the day he gathered up deeds and papers, some of his own furniture and other personal property, placed them in the car and left the home. From that time until March 1st, 1948 they lived apart from each other. On one occasion while they were living apart, although the record is not clear on this point, he asked Anna for the North Side Bank Savings Account book which showed a balance of $5,000.00 deposited in the names of both parties, telling her he was going to buy a car and that she could have her car which he had meanwhile been using for his own purposes. The parties then seemed to have once more lived together from March 2nd, 1948 until April 23rd, 1948. On the day last mentioned the parties separated again, this time finally after quarrelling over Anna's giving a piece of friction tape, taken from his car, to a neighbor's child who had come to the house and asked for it. Haydn scolded his wife for doing that after he had told her not to, and he also struck her across the face with his hand so severely that she was stunned and, as she testifies, this violence left a red mark on her face, which a store employee and a neighbor who came at plaintiff's call somewhat later that day, observed. After this quarrel he got his bags, took a number of items of personal property, put them in the car and drove off with them to a house on McKinley Street which the parties had, during their marriage, purchased with joint funds and which had the title thereof standing in both of their names jointly. Haydn appears to have lived there ever since. From April 23, 1948, when the defendant left his wife as above described to the date the divorce was granted September 19th, 1949, was approximately one year and

five months. From that date in April 1948 until this suit was commenced August 24th, 1948, was some four months. From the date that defendant first left plaintiff on January 6th, 1948, to the date of commencement of this suit was over seven months. During that period the parties only lived together from March 2nd to April 23rd, 1948.

I

## AS CONCERNING THE DECREE OF DIVORCE AWARDED PLAINTIFF.

As stated above both parties asked in their pleadings for a divorce from the other on the same general ground, to-wit: that each had offered such indignities to the other as to "render his or her condition intolerable."

Under the previous decisions of this court commencing with Willis v. Willis, 48 Wyo. 403, 429; 49 P. (2d) 670, it has been often said that:

"* * * it must be borne in mind that the appellate court must assume that the evidence in favor of the successful party is true, leave out of consideration entirely the evidence of the unsuccessful party in conflict therewith, and give to the evidence of the successful party every favorable inference which may be reasonably and fairly drawn from it."

See also subsequent decisions to the same effect listed in Jacoby v. City of Gillette, 62 Wyo. 487-494, 174 P. (2d) 505.

With this rule in mind we have reviewed the evidence appearing in the record and as set forth herein.

What should be regarded as "indignities" under the statute (§ 3-5905 W.C.S. 1945) has been very well discussed in the text Keezer, "Marriage and Divorce"

(3rd Ed.) pp. 483, 4, Section 436 where this language appears:

"It is impossible to lay down a general rule as to what constitutes such indignities as will justify a divorce, as this necessarily depends upon all the circumstances of the particular case, the position in life, and the character and disposition of the parties. In actions for divorce on this ground each case should be determined on its own individual merits. The Supreme Court of Missouri has aptly said: 'It is impossible to lay down any rules that will apply to all cases, in determining what indignities are grounds of divorce, because they render the condition of the injured party intolerable. * * * The legislature chose to leave the subject at large, and by the general words employed, evidently designed to leave each case to be determined according to its own peculiar circumstances.' "

and (2) Schouler's "Marriage, Divorce, Separation and Domestic Relations" (6th Ed.) p. 1863 § 1649 has language also substantially to the same effect:

"As to 'offering indignities,' whether it be to a wife's person, 'so as to render her condition intolerable and her life burdensome,' or, in a reciprocal sense, so that either spouse may complain when aggrieved, the object of our numerous local statutes which specify this cause of divorce appears to be to punish conduct which produces, strictly speaking, no apprehension of bodily harm in the complainant, and yet is, so to speak, cruel and unkind. Publicity seems to be reckoned an important element in this class of cases, where apprehension of danger was not immediate, so that the offended spouse must have been wounded by being disgraced in the eyes of others."

The author last mentioned also says on page 1865 that the:

"* * * refusal to send away defendant's son, with whom plaintiff could not get along, or that the wife insists on her relatives living with her, are not indignities."

Section 3-5905 supra insofar as pertaining to the

particular ground of divorce pleaded by the parties hereto reads:

"A divorce from the bonds of matrimony may be decreed by the district court of the county where the parties, or one of them reside, on the application of the aggrieved party by petition, in either of the following cases: * * *

"Eighth—When either party shall offer such indignities to the other, as shall render his or her condition intolerable."

The fourth sub-division of said section is as follows:
"When either party has wilfully deserted the other for the term of one year."

27 C.J.S. section 44 page 589 while indicating that "desertion is not an indignity" generally remarks however that:

"Desertion is not an indignity, although desertion, insufficient alone to constitute a ground for divorce, may, as one element, go to make with other elements a ground of divorce on account of indignities."

While it is generally true that:

"The time consumed by the pendency of a suit for divorce, annulment, or separate maintenance ordinarily may not be computed as part of a period of desertion." (C.J.S. 27 page 601, § 56).

yet it has been held that where one of the spouses has wilfully deserted the other, the institution of a suit for divorce by the injured party will not be sufficient to convert the desertion into justifiable separation from the time of the pendency of the suit and that time should not be deducted from the period of separation so as to reduce the desertion period to less than the statutory requirement. Hitchcock v. Hitchcock 15 App. (D. C.) 81.

It can hardly be said that the defendant's conduct as

delineated above and which extended over a considerable period of time was not "cruel and unkind." Wilful desertion of his wife by Haydn for months at a time and refusal on his part to speak to her and wholly ignore her in the presence of others would seem to have wounded and disgraced her in the eyes of others who were present on such occasions. The trial court judge evidently thought so, and he saw these parties on the witness stand; heard them giving their testimony and was in a far better position than we are to determine whether the conduct of the husband rendered her condition "intolerable." Even the cold record before us indicates that the wife tried to make the marriage a success. She attended to his business and financial affairs while he was working; handled his salary checks and saved money for him from them, put her own property in joint ownership with his, and ran his household affairs satisfactorily. It is apparent that these people could not live together without publicly quarrelling. His resort to violence—which he admitted and for which he says he was sorry—indicates that he had a hot temper and that it was not kept under control as it should have been. If this decree of divorce were reversed it would very probably only delay the final separation of the parties; consequently in view of what has been said above we are not inclined to disturb that part of the decree which awarded the wife the divorce and separation she and he both sought. On the date of the decree herein they had lived apart from each other longer than the statutory period fixed as the basis for a divorce on the ground of wilful desertion.

## II

## AS CONCERNS THE DIVISION OF THE PROPERTY OF THE PARTIES.

It seems that after they were married on May 29th, 1945, to undertake their second venture on the sea of

matrimony, their first one having utterly failed obviously through the husband's fault, he refusing to speak to her, provide a home for her or support her, still the wife was willing to put her property in both their names indicating joint ownership by him and her. She gave up, at his request, an excellent and lucrative position in the general offices of the Union Pacific Coal Company which paid her $300.00 monthly, a position which she has never regained. He, however, has constantly received a salary of between $400 and $500 monthly since June 1st, 1945. Since that time she has completely lost the income which she was receiving as above set forth; undoubtedly in making a division of the property these salient facts were in the mind of the court in reaching the decision it did relative to the property of the two parties. The record discloses that Mr. and Mrs. Williams had no less than six joint savings and checking accounts in three banks in Rock Springs and the finances of the parties including monies received from rentals, purchases and sales of property transactions which they engaged in during the little over two years they lived together as husband and wife, were intermingled so thoroughly that we shall not undertake to trace the funds received, deposited and withdrawn by them through these several accounts, in an endeavor to show that each by the decree in question received substantially an equal division of what passed through these accounts as ordered by the district court—something defendant appears to deem necessary in order that an equitable disposition of the properties held by these litigants should be accomplished. We think no useful purpose would be subserved if we should attempt to trace meticulously these various transactions—an unreasonably lengthy opinion only would result.

In the case of Lovejoy v. Lovejoy 36 Wyo. 379, 388; 256 Pac. 76 this court said:

"It is conceded that in making a division of property under the statute the trial court exercises a discretion. There are no hard and fast rules to control its action. The statute does not require an equal division. A just and equitable division is as likely as not to be unequal. The decision of the trial court should not be disturbed, except on clear grounds, as that Court is usually in a better position than the appellate court to judge of the respective merits and needs of the parties."

This language was used after quoting the statute, the source of the trial court's power in matters of this character (section 5000 Compiled Statutes of Wyoming, 1920, now section 3-5916 W.C.S. 1945) which reads:

"In granting a divorce, the court shall also make such disposition of the property of the parties, as shall appear just and equitable, having regard to the respective merits of the parties and to the condition in which they will be left by such divorce, and to the party through whom the property was acquired, and to the burdens imposed upon it, for the benefit of the wife and children, and the court may also decree to the wife reasonable alimony out of the estate of the husband having regard for his ability, and to effectuate the purposes aforesaid, may order so much of his real estate or the rents and profits thereof, as is necessary to be assigned and set out to the wife for life, or may decree a specific sum to be paid by him to her, and use all necessary legal and equitable processes to carry its decrees into effect."

The decree rendered by the District Court omitting title and preliminary recitals is nevertheless quite extended but as it discloses a careful and thorough examination of the record by the judge who tried the case we shall insert it at this point as follows:

"The Court further finds the issues generally for the plaintiff and against the defendant upon the cause of action alleged and finds that defendant has heretofore offered to plaintiff such indignities as to cause and render plaintiff's condition intolerable as the wife of the defendant.

"The Court further finds that plaintiff and defendant intermarried on the 29th day of May, A.D. 1945, at the City of Rock Springs, in said county and state, which was the second marriage performed and entered into by plaintiff and defendant, and have ever since been, and are now husband and wife; that plaintiff and defendant have been bona fide residents of the County of Sweetwater, State of Wyoming, for more than one year last past, immediately preceding the filing of this suit, and have resided and are now residing in said county and state; that plaintiff's Petition for divorce is not founded in or exhibited by collusion between the plaintiff and defendant; and that plaintiff has not been guilty of the same or similar misconduct as is charged in her Petition against the defendant.

"The Court further finds that prior to the marriage of plaintiff and defendant, the plaintiff and defendant respectively were the owners of certain real property and personal property located in the City of Rock Springs in said county and state; and that plaintiff and defendant have acquired other real and personal property since their marriage.

"The Court further finds that the following described real property now stands in the names of plaintiff and defendant, viz.:

" 'The Westerly forty-one (41) feet of Lots Numbered One (1) and Two (2), in Block Numbered One (1), in the Wardell Addition to the City of Rock Springs, Wyoming, together with the buildings, improvements and appurtenances, situate thereon and appertaining thereto.'

" 'Lot Numbered Ten (10), in Block Numbered Seven (7), in the Prospect Heights Addition to the City of Rock Springs, in Sweetwater County, Wyoming, together with the buildings, improvements and appurtenances, situate thereon and appertaining thereto.'

" 'Lot Numbered Two (2), in Block Numbered Seventeen (17), in the Hillside Addition to the City of Rock Springs, in Sweetwater County, Wyoming, together with the buildings, improvements and appurtenances situate thereon and appertaining thereto.'

"The Court further finds that defendant, received as rents from the Muir Street property, so called, described as Lot Numbered Two (2), in Block Numbered Seventeen (17), in the Hillside Addition to the City of Rock Springs, Wyoming, in the sum of Six Hundred Thirty-seven and 94/100 ($637.94) Dollars, and the Court further finds that the net sum of Eight Hundred sixty-one and 57/100 ($861.57) Dollars, as of this date remains in the hands of the Clerk of Court and her agent, as rentals received after all accounts contracted, indebtedness incurred and other expenses including the expense of collecting said rents, were paid, in connection with the real property described as Lot Numbered Two (2), in Block Numbered Seventeen (17), in the Hillside Addition to the City of Rock Springs, Wyoming; and the Court further finds these rents collected by the defendant and by the Clerk of Court from said Muir Street property, so called, during the years of 1948 and 1949 amount to the sum of One Thousand Four Hundred ninety-nine and 51/100 ($1,499.51) Dollars, which should be divided equally between said plaintiff and defendant, after all expenses for repairs and County Taxes due against said property are paid. "The Court further finds that the amounts withdrawn by said parties from the joint savings accounts, by each of them, may be retained by the respective parties; and the Court further finds that said parties were also the owners of certain kitchen equipment including cooking ranges, heating stoves, ice boxes and other personal property, and household furniture, located in and upon the said rental property owned by plaintiff and defendant and herein specifically described.

"The Court further finds that the defendant is an able-bodied man, and is well able to and does earn the approximate sum of Four Hundred ($400.00) Dollars, per month, as an employee of the Union Pacific Coal Company; that the sum of Sixty ($60.00) Dollars per month, payable semi-monthly is a reasonable amount to be allowed plaintiff as permanent alimony herein, or until the further order of the Court; that the sum of Three Hundred Fifty ($350.00) Dollars is a reasonable amount to be allowed plaintiff as attorney's fees, for the prosecution of this suit.

"The Court further finds that the defendant has not paid to the plaintiff any money for her support and maintenance or any temporary alimony during the pendency of this suit and that this suit has been pending in said District Court since the 24th day of August, A.D. 1948, and that defendant has not contributed anything toward the support and maintenance of plaintiff since said date, and the Court further finds that on August 25th, A.D. 1948, the District Court in and for said county and state made and entered a Restraining Order and Injunction, enjoining and restraining the defendant, during the pendency of this action from collecting from the tenants of plaintiff and defendant any weekly or monthly rent, and ordering that said rent be collected and impounded in the Office of the Clerk of the Court, with authority to pay out of said rents, so collected and deduct the same thereform (therefrom), any and all accounts contracted by said plaintiff and defendant or the tenants for water, gas and electric lights, in connection with said rental property.

"WHEREFORE, IT IS CONSIDERED, ORDERED, ADJUDGED AND DECREED, that the plaintiff, Anna Williams, be and she is hereby granted an absolute divorce from the defendant, Haydn F. Williams, and that the bonds of matrimony heretofore existing between plaintiff and defendant be and the same are hereby dissolved, set aside and held for naught.

"IT IS FURTHER ORDERED, ADJUDGED AND DECREED, that the plaintiff have and recover judgment against defendant, as temporary and permanent alimony for the support and maintenance of herself the sum of Sixty ($60.00) Dollars per month, payable semi-monthly, to commence on the 24th day of August, A.D. 1948, the date when plaintiff instituted this action against defendant, and payable hereafter on the 1st day and 15th day of each and every month hereafter for a period of three years from the date hereof; and defendant is hereby ordered to forthwith pay to plaintiff alimony which has accrued to date, amounting to Seven Hundred Eighty and no/100 ($780.00) Dollars.

"IT IS FURTHER ORDERED, ADJUDGED AND DECREED, that plaintiff have and recover judgment

against defendant for the sum of Three Hundred Fifty ($350.00) Dollars as attorney's fees, together with costs of this action taxed at Nineteen and 50/100 $19.50) Dollars, and defendant is hereby ordered to pay the same to plaintiff or to the Clerk of this Court.

"IT IS FURTHER ORDERED, ADJUDGED AND DE-CREED, that the real and personal property herein-after specifically described and described in plaintiff's Petition, to-wit:

" 'The Westerly forty-one (41) feet of Lots Numbered One (1) and Two (2), in Block Numbered One (1), in the Wardell Addition to the City of Rock Springs, Wyoming, together with the buildings, improvements and appurtenances situate thereon and appertaining thereto.'

" 'One lot of household furniture, equipment, fixtures, utensils, dishes, goods, wares, merchandise, personal property and belongings located and being in plaintiff's home above described.'

" 'Lot Numbered Two (2) in Block Numbered Seven-teen (17), in the Hillside Addition to the City of Rock Springs, in Sweetwater County, Wyoming, together with the buildings, improvements and appurtenances, situate thereon and appertaining thereto.'

" 'One lot of kitchen equipment including cooking ranges, heating stoves, ice boxes and other personal property and household furniture, located in and upon said rental property above specifically described.'

be and the same is hereby awarded and set over to the plaintiff, Anna Williams, as her sole and separate prop-erty, and the defendant is hereby ordered forthwith to make, execute, acknowledge and deliver to plaintiff good and sufficient deeds of conveyance, Bills of Sale and other proper assignments of title, conveying, trans-fering and assigning said real property and personal property to said plaintiff.

"IT IS FURTHER ORDERED, ADJUDGED AND DE-CREED, that the real and personal property herein-after specifically described and described in plaintiff's Petition, to-wit:

" 'Lot Numbered Ten (10), in Block Numbered Seven (7), in the Prospect Heights Addition to the City of Rock Springs, in Sweetwater County, Wyoming, together with the buildings, improvements and appurtenances, situate thereon and appertaining thereto.'

" 'One lot of household furniture, equipment, fixtures, utensils, dishes, goods, wares, merchandise, personal property and belongings located and being in the defendant's present home above described.'

be and the same is hereby awarded and set over to the defendant, Haydn F. Williams, as his sole and separate property and the plaintiff is hereby ordered forthwith to make, execute, acknowledge and deliver to defendant a good and sufficient deed of conveyance and Bill of Sale, conveying, transfering and assigning said real and personal property to said defendant.

"IT IS FURTHER ORDERED, ADJUDGED AND DECREED, that the plaintiff pay to defendant in connection with Lot Numbered Two (2), in Block Numbered Seventeen (17), in the Hillside Addition to the City of Rock Springs, Wyoming, and defendant have judgment for the same, the sum of Two Thousand ($2,000.00) Dollars, provided, however, plaintiff is hereby authorized and empowered to withhold from defendant the payment of said Two Thousand ($2,000.00) Dollars until defendant has paid to plaintiff alimony due hereunder, attorney's fees, costs of court and other indebtedness or money due to plaintiff by defendant, under this Decree.

"IT IS FURTHER ORDERED, ADJUDGED AND DECREED, that plaintiff deliver to defendant certain United States Savings Bonds, now standing in the names of said parties, including those in which defendant's name is first registered on said bonds, of the maturity value of Two Thousand Nine Hundred ($2,900.00) Dollars.

"IT IS FURTHER ORDERED, that the clerk of this Court shall endorse and deliver to her agent, W. J. Muir certain cashier's checks in the sum of Eight Hundred sixty-one and 57/100 ($861.57) Dollars collected as rent, and said agent shall pay any additional expenses

for repairs incurred by him, and taxes due the County of Sweetwater for the years 1948 and 1949 assessed against the rental property described herein and standing in the names of the plaintiff and defendant.

"To which rulings, order and judgment of the Court defendant and plaintiff object and except, and are hereby granted exceptions.

"Dated this 19th day of September, A.D. 1949."

Analyzing and outlining the substance of this decree as regards the property real and personal received by plaintiff and defendant thereunder it would appear the property division approved by the District Court may properly be summed up in this statement:

There was awarded to plaintiff the following personal property to-wit:

| | |
|---|---:|
| "Share of Accrued Rent since suit was instituted August 24, 1948, on Muir Street property. (Lot No. 2) ............................................$ | 749.76 |
| Permanent Alimony at $60.00 per month for the period of three years, or until the further order of the court............................................ | 2,160.00 |
| Accrued alimony since August 24, 1948, (date of institution of this suit)............................. | 780.00 |
| Attorney's fees ...................................................... | 350.00 |
| Court costs ............................................................ | 19.50 |
| | $4,059.26 |
| Less amount to be paid by plaintiff to defendant for Lot Numbered Two (2), Block Seventeen (17), in the Hillside Addition to the City of Rock Springs, Wyoming. (Known as the Muir Street property.)........................... | 2,000.00 |
| | $2,059.26 |

*Real property awarded plaintiff to-wit:*

"Westerly 41 feet of Lots One and Two of Block Numbered One (1), Wardell Addition to the City of Rock Springs, Wyoming, together with household furnish-

ings and fixtures. (Pine Street property and plaintiff's home.)

"Lot Numbered Two (2), in Block Numbered Seventeen (17), Hillside Addition to the City of Rock Springs, Wyoming (Muir Street Property), together with household furnishings and fixtures.

There was awarded to the defendant the following personal property; to-wit:

"Share of Accrued Rent since suit was instituted August 24, 1948, on Muir Street Property (Lot No. 2) ........................................................$ 749.75
Plaintiff's payment to defendant due on account of transfer to her of Lot Numbered Two (2), Block Seventeen (17), Hillside Addition to the City of Rock Springs, Wyoming. (Muir Street property) ........................ 2,000.00
U. S. Savings Bonds, maturity value of............. 2,900.00

$5,649.75

Less Attorney's fees.............................$ 350.00
Less Court Costs.................................... 19.50
Less Permanent alimony at $60.00 per month for the period of three years ................................................... 2,160.00
Less accrued alimony since institution of this suit, August 24, 1948.... 780.00

$3,309.50  3,309.50

$2,340.25

*Real property awarded defendant to-wit:*

"Lot numbered Ten (10), Block Numbered Seven (7), Prospect Heights Addition to the City of Rock Springs, Wyoming. (Known as McKinley Street property), together with household furnishings and fixtures. (Defendant's present house.)

We shall not undertake to discuss the respective values of the several pieces of real property awarded to the parties. It is common knowledge that real estate values in this State not only fluctuate now with chang-

ing conditions but also are highly inflated above normal conditions. For example a real estate agent who testified in the case stated that the Muir Street property had a value of about $12,000.00, while the McKinley Street property had a value of around $8,000.00 and possessed a much better location. He further said in regard to the Muir Street property that while he considered it was worth $12,000.00 "if it could be rented, yet if it could not be rented it would have no value at all."

In the case of O'Day v. O'Day, 47 Wyo. 22; 30 P. (2d) 488, it was indicated that the trial court exercises a sound discretion in making a division of property under the statute in accordance with which the court acts and quoted above, and it was pointed out that in Pinney v. Pinney 66 Utah 612, 245 P. 329, the rule in that jurisdiction was stated to be:

" 'The division of property is a matter that rests largely within the sound discretion of the trial court. Unless it appears from the findings that the division made is not equitable under all the circumstances of the case, an appellate court should not, and will not, disturb the order of the trial court. Read v. Read 78 P. 675, 28 Utah 297, Friedli v. Friedli, 65 Utah 605, 238 P. 647.' "

In Crawford v. Crawford 63 Wyo. 1, (p. 12) 176 P. (2d) 792, a case where as in the case before us, it appeared the parties mingled their property matters somewhat akin to the method pursued in the cause now before us, this is stated:

"No, the problem is not one in mathematics exclusively nor is it a question of what this court might think should be done in the case, viewing only the cold record divested of the living testimony of the parties and their demeanor before the District Court. Whether there exist 'clear grounds' (Lovejoy vs. Lovejoy supra) upon which we can say that that court abused the wide lati-

tude of discretion reposed in it in such matters is the point to be decided here."

Before closing this opinion, however, a claim of the defendant in criticism of the decree aforesaid should not be overlooked and which we think must be sustained. He points out that the sum of $1,499.51 accrued rentals from Lot Numbered Two (2) in Block Seventeen (17), in the Hillside Addition to the City of Rock Springs, Wyoming, was found by the Court should be equally shared between plaintiff and defendant after expenses for repairs and County Taxes due against said property were paid. Although this finding was made, no adjudication appears to have been incorporated in the decree so as to carry this finding into effect. Accordingly as it is clear that this correction should be made, and the decree aforesaid should be modified to that extent. As so modified the decree will be affirmed. Each party shall pay their own attorney's fees and costs in this court.

*Affirmed.*

KIMBALL, C. J., and BLUME, J., concur.