JOYE TYLER,

*Appellant*

(Defendant below)

vs.

NEAL A. TYLER,

*Appellee*

(Plaintiff below)

(No. 2838; December 2nd, 1958; 332 Pac. (2d) 489)

202

For the appellant, the cause was submitted upon the brief and also oral argument of John J. McIntyre of Casper, Wyoming.

For the appellee, the cause was submitted upon the brief and also oral argument of W. J. Wehrli of Casper, Wyoming.

Heard before Blume, C. J., and Harnsberger and Parker, JJ.

## OPINION

Mr. Justice Parker delivered the opinion of the court.

Neal A. Tyler was granted a divorce from Joye Tyler on the grounds of desertion, the decree providing that plaintiff pay the defendant some $4,000 and voiding a certain stock certificate held by defendant.

From the decree defendant has appealed, asserting that there was no evidence to prove desertion, that the disposition of the property was not just or equitable, and that the court erred in declaring the stock certificate to be void.

The couple were married May 15, 1954, and lived together in Casper, Wyoming, until October 18, 1956, at which time defendant left the marriage home at Casper in her automobile, taking with her all of her clothing, personal belongings, and a stock certificate evidencing her ownership of shares in a corporation in which plaintiff was the principal stockholder. For the first three months after defendant departed, plaintiff deposited $150 to her account in a Casper bank each month. About March 9, 1957, defendant called plaintiff on the telephone and asked him why he had not made a deposit in the bank. He responded that he could not make further payments and indicated that he did not intend to do so; whereupon, according to his testimony, she said, "Well, I'll see about that." On May 9, 1957, defendant returned to Casper and commenced a divorce action against plaintiff which she subsequently dismissed on June 7, 1957. The following day she began a suit for separate maintenance. On November 1, 1957, a few days more than a year after defendant had left Casper, the plaintiff filed the present suit for a divorce on the grounds of desertion.

There is no question that the parties lived apart during the period from October 18, 1956, to November 1, 1957, but defendant insists that there was no evidence sufficient to show that there was a desertion by her. She contends that: She left Casper on the mutual decision of the parties because of her ill health; the Casper residence was to be sold and the couple to live apart until the time when they would find another

place to live; and numerous letters were exchanged between the parties during the first few months that she was in Louisiana, the plaintiff's communications showing the parties to be on friendly terms. There is little conflict in the testimony regarding the happenings either before or after the separation. It is uncontradicted that she made some complaint about asthma but submitted to no comprehensive physical examination for diagnosis of her trouble and took no treatment or medicine designed to combat it. There was some conversation between the parties about selling the house, and certain offers made to plaintiff were not accepted. Plaintiff does not dispute that there was some discussion of defendant's health problems, and it is conceded by both that there were no arguments or recriminations at the time of the departure. Several letters which plaintiff wrote to defendant were introduced in evidence without objection from plaintiff's counsel who insisted that these had no bearing upon the question of desertion. The letters of plaintiff written prior to January were very friendly, but the one in January was critical of defendant for the amounts of money she was demanding.

Throughout the trial defendant steadfastly insisted that she did not intend to leave permanently but went only because of her health since she loved plaintiff and there had never been any trouble of any kind between them.

The case therefore turns upon a single point, Was the separation a desertion under § 3-5905, W.C.S.,1945, enumerating causes for divorce? Plaintiff insists that it *was* from the very chronology of events, i.e., on October 18, 1956, defendant loaded all her belongings into her automobile, took a stock certificate from her Casper safe-deposit box and left; on March 9, 1957,

she demanded payment of $150 per month, and when plaintiff demurred, she gave him to understand that she would take action and rang off; on May 9, 1957, she commenced suit for divorce in Natrona County, Wyoming, and came to Casper on June 1 for a hearing thereon; on June 8, 1957, having dismissed the divorce action, she instituted a separate maintenance suit against the plaintiff; from November 7, 1957, to December 20, 1957, she was at Casper; and during the entire period from the time she left, she did not visit plaintiff or go to his home.

Defendant on the other hand insists that her actions did not constitute a desertion but urges that all of the events contradict any such view. She maintains that she left by mutual understanding under which she was to go away for her health, that there was discussion about the selling of the house, and that the friendly relationship, which was evidenced in one aspect by his letters to her, negatived any intention to separate permanently. To substantiate her position, defendant points out that desertion or abandonment consists of the voluntary separation of one spouse from the other without the latter's consent. Plaintiff's counsel does not question this statement of law but urges that defendant deceived plaintiff into believing that she had not deserted him but intended to return. He argues that her purpose in calling on March 9, 1957, was not to talk to him about returning to Casper but only to find out why the money had been shut off and that when plaintiff became convinced that she had intended to desert him from the first he acted accordingly.

Thus, we are presented with two questions, the answers to which will determine whether or not the divorce should have been granted: (1) Did defendant intend to permanently leave the marriage home when

she departed from Casper on October 18, 1956, and (2) Did plaintiff consent to defendant's departure?

On the first point, there was sufficient uncontroverted evidence to warrant the trial court in determining that defendant left with an intention to stay away permanently. Her testimony was to the contrary, but of course, the trial court could and apparently did disregard that. In any event our review is limited to a consideration of the evidence which was favorable to the prevailing party. Rayburne v. Queen, Wyo., 326 P.2d 1108, 1111, and cases cited. Perhaps it should here be said that the letters contributed little if anything to a clarification of status since they tended to show *his* intention rather than *hers*. We think that the trier of fact in this case was obligated to consider and construe all of the evidence and to interpret the departure in the light of subsequent events. Many circumstances bore upon the question of the intention to leave permanently. Perhaps no one occurrence was determinative, but all things considered we believe there was sufficient evidence upon which such a finding of desertion could properly be based.

On the second point, plaintiff made no objection to defendant's departure, but his counsel urges that he was deceived because he thought she was leaving only for a temporary visit. There is some basis for this contention because throughout the trial and even in this court defendant insisted that she never intended otherwise. It follows then as a matter of course that whatever agreement plaintiff made to defendant's departure was based upon a misunderstanding or misconception of what actually was occurring. He thought that she was leaving temporarily, and the trial court has now found, on evidence which we think justified it, that she left with the intent to depart permanently.

The question of consent as it affects desertion has not been litigated extensively, but different authorities apparently assume, and we think properly so, that consent to a separation will not preclude a charge of desertion unless it is based upon knowledge of the facts. For instance, see the statement in 27 C.J.S. Divorce § 38, where it is said:

"* * * The consent must be based on knowledge that the other spouse intends a permanent severance of matrimonial cohabitation; it is not established by agreement to a temporary absence.* * *"

Although the cases there cited are not conclusive on the point, they tend to bear out the legal proposition which is stated.

Brown v. Brown, 92 Cal.App. 276, 268 P. 401, 403, held that a wife who left home with the understanding that she was to be gone for a few weeks but did not return for over two years had deserted her husband. The court there discussed the California definition of desertion and a section of the code relating thereto in which it was provided:

" 'Absence or separation, proper in itself, becomes desertion whenever the intent to desert is fixed during such absence or separation.' "

It appears to us that this rule is a proper statement of the law governing such matters *even were it not so provided by statute.* The court there said:

"* * * The question as to whether or not the intent thereafter became fixed depended upon all the facts and circumstances which transpired subsequently, and the statements, admissions, acts, and conduct of the party charged with such desertion. 'It is for the court trying the case to determine from all the facts and

circumstances appearing in the case whether or not there was an absence of that consent to living separate and apart which is essential to constitute a desertion.' McMullin v. McMullin, 140 Cal. 112, 73 P. 808.* * *"

In Pempek v. Pempek, 141 Conn. 602, 109 A.2d 238, 239, the court discussed the question of consent as it relates to desertion and there said:

"* * * To constitute the sort of consent on the part of the plaintiff which will bar his action, there must be a positive willingness on his part that the cessation of cohabitation occur and *continue*.* * *" (Emphasis supplied.)

Analysis of these authorities as applied to the evidence in the instant case convinces us that the trial court was entitled to find that there was no such consent by plaintiff to defendant's desertion.[1]

We pass then to the question of division of the property. The decisions of this State are replete with statements which indicate the wide discretion which a trial court has in the division of property in matters of divorce.[2] This is as it should be since a reviewing court does not have the advantage of seeing the parties, observing their demeanor, and evaluating the situation first hand. Appellate courts will not interfere with property settlements except upon clear

---

[1] A general finding is one of every special thing necessary to be found to sustain the judgment. Hinton v. Saul, 37 Wyo. 78, 259 P. 185.

[2] Lovejoy v. Lovejoy, 38 Wyo. 358, 267 P. 91; O'Day v. O'Day, 47 Wyo. 22, 30 P.2d 488; Crawford v. Crawford, 63 Wyo. 1, 176 P.2d 792; Williams v. Williams, 68 Wyo. 175, 231 P.2d 965.

grounds. All things considered, we do not think the present case is one which would merit our interference. It is unnecessary to recite the evidence on the point, but it is significant to note that the union lasted only a relatively short time, there were no children, both parties had been married previously, and defendant's opportunity for earning does not seem to have been materially altered during the period of the marriage.

Defendant urges the impropriety of the court's "declaring the defendant's certificate [signed by her as secretary] for 150 shares of stock * * * to be void, and in ordering the cancellation of such certificate." The records of the corporation were not introduced in evidence, but it was stated that they were in the courtroom and that they did not disclose defendant ever to have been an officer of the corporation. Allen H. Tyler, the nephew of plaintiff, claims that he was the secretary at all times from 1951 to the date of the trial and that defendant was never elected as an officer. Defendant testified that she was secretary and had authority to sign the certificate but admitted that she had never seen the corporation's minute books. The evidence was conflicting, but that most favorable to the plaintiff warranted a conclusion by the court that the defendant had not been an officer of the corporation and hence had no authority to sign the certificate so as to effect a valid transfer of the stock. Defendant questions the fairness of a holding which would interfere with her ownership of the stock when plaintiff had voluntarily signed the certificate and later referred to it in his letters. This phase of the question relates to the equities of the entire property settlement which we have previously held to be within the discretion of the trial court.

Affirmed.