Alpha Louise WARREN, Appellant
(Defendant below),

v.

Francis E. WARREN, Appellee
(Plaintiff below).

No. 2944.

Supreme Court of Wyoming.

May 2, 1961.

Guy & Phelan, Walter B. Phelan, Cheyenne, for appellant.

Greenwood, Ferrall, Bloomfield, Osborn & Lynch, Loomis, Lazear & Wilson, Bard Ferrall, Cheyenne, for appellee.

Before BLUME, C. J., and PARKER, HARNSBERGER and McINTYRE, JJ.

Mr. Justice McINTYRE delivered the opinion of the court.

The plaintiff, Francis E. Warren, sued for divorce from the defendant, Alpha Louise Warren, and for custody of the three minor children of plaintiff and defendant. The decree of the district court granted a divorce to plaintiff; provided for temporary custody of the children; awarded permanent alimony, attorney fees and suit money to the wife; and made a disposition of property. From this decree the defendant has appealed claiming that the trial court erred in failing to set over to her any part of the property owned by plaintiff. No other issue is presented.

The trial of the case lasted for five days and the transcript of testimony is voluminous. It is replete with evidence of inexcusable misconduct on the part of defendant, mostly behavior stemming from continued excessive drinking, particularly during the last two years of the marriage. It would serve no purpose to review or to attempt to recount all of the acts of nonfeasance and misfeasance of which she would appear from the evidence to be guilty. It is not contended that grounds for the granting of a divorce to plaintiff were absent, and counsel for defendant in his brief admits that the evidence was, in some respects, "rather overwhelming" that she had misconducted herself during a period of some two years.

On the other hand, it could scarcely be said that plaintiff was entirely without fault. Mrs. Warren had sued him for divorce in 1956, but a reconciliation was effected in December 1956. After that he kept a record of the activities of his wife. He hired detectives to follow her and made tape recordings of her telephone conversations. During this period he did not strike or offer physical abuse to defendant. It would seem that he mostly ignored her.

Mrs. Warren described his behavior by saying that after the reconciliation he became "a total, polite stranger."

At the time the divorce was granted, defendant held property in her name consisting of stock valued at $17,186.25; Government bonds worth $400; and an automobile probably worth $2,000. These items of property, with a total valuation of $19,586.25, were set over to or left to remain as property of the wife. In addition the home with furnishings, which had previously been in the name of both husband and wife, was to be sold. The wife was to be given one-half of the net proceeds or $35,000 whichever was the greater. Counsel for both parties indicated in oral argument on appeal that a subsequent arrangement was made between the parties themselves with respect to the home and furnishings, which arrangement probably would result in the wife receiving a net of approximately $35,000 from a sale of such property and the husband receiving nothing therefrom.

Aside from these property benefits distributed to or left in the name of defendant, she was granted permanent alimony of $500 per month as long as the defendant should live, or until she shall have remarried, and said permanent alimony was made a charge against plaintiff's estate. She was allowed an attorney's fee of $3,500 and suit money in the amount of $500. For purposes of comparison, it is sufficiently correct to say that the defendant-wife has been left with a total of $54,586.25 in property, plus a cash payment of $500 per month.

The plaintiff-husband was left with property valued at approximately $750,000, including nothing for the home and furnishings. Substantially all of this property was inherited by plaintiff subsequent to his marriage to defendant. It includes an interest in his mother's estate valued at $317,000 and not yet distributed. Most of the other property was derived from his father's estate following his death in 1949. A few shares in Warren Livestock Company had been given to plaintiff by his father prior to his death and some were inherited from his grandparents. Except for $16,000 in stock of the American National Bank, $1,250 in stock of Cheyenne Apartment Co., $18,725 in Government bonds, and bank accounts which amounted to some $13,000 at the time of the divorce, the rest of plaintiff's property is in stock of Warren companies controlled by plaintiff and his sister.

Admittedly, the wife neither brought nor contributed any substantial property to the marriage. Also, the property in her name at the time of the divorce, which was allowed to her in the divorce decree, came from plaintiff or from property inherited by him.

On several previous occasions this court has set out in full the Wyoming statute, § 20–63, W.S.1957, which pertains to the division of property in divorce cases. It provides that in granting a divorce the court shall make such disposition of the property of the parties as shall appear just and equitable, having regard to the respective merits of the parties and to the condition in which they will be left by such divorce, and to the party through whom the property was acquired. Said section also provides that the court may decree to the wife reasonable alimony out of the estate of the husband.

Also on several previous occasions this court has announced these principles with respect to property divisions in divorce cases: (1) In making a division of property under the statute the trial court exercises a discretion; (2) there are no hard and fast rules to control its action; (3) the statute does not require an equal division; (4) a just and equitable division is as likely as not to be unequal; and (5) the decision of the trial court should not be disturbed, except on clear grounds, as that court is usually in a better position than the appellate court to judge of the respective merits and needs of the parties. See Boschetto v. Boschetto, 80 Wyo. 374, 343 P.2d 503, 506; Crawford v. Crawford, 63 Wyo. 1, 176 P.2d 792; Garman v. Garman, 59 Wyo. 1, 136 P.2d 517, 518; O'Day v. O'Day, 47 Wyo. 22, 30 P.2d 488, 489; Lovejoy v. Lovejoy, 36

Wyo. 379, 256 P. 76, 79; Id., 38 Wyo. 358, 267 P. 91.

In the case of Boschetto v. Boschetto, supra [80 Wyo. 374, 343 P.2d 506], it was said:

"Inasmuch as a trial court's judgment cannot be disturbed except on clear grounds, we have seldom interfered with the action of the trial courts and whenever we have done so we have interfered only to a very limited extent. It is readily seen that unless we adhere to that course we should be apt to have before this court a plethora of appeals in divorce cases involving a division of property and asking us to virtually constitute ourselves as a court of the first instance to divide the property. We do not think that that is the function of this court."

Appellant contends that in the light of a marriage which existed for some twenty years, during which time she bore her husband three children by Caesarean section and had three interrupted pregnancies, the division of the property was wholly unjust and inequitable, he receiving the equivalent of some $750,000 and she only $54,500, a considerable part of which was in her name before the divorce. Whether or not the trial court took into consideration the length of the marriage, the circumstances thereof during the early years, the contribution which she made, and the portion of her life devoted to the union, is not readily apparent. Nothing is stated in this regard, and the decree is rendered somewhat ambiguous by phraseology which in some portions indicates that the court was awarding alimony and in others that a disposition of the property was being made. The court's use of the word "alimony" might in one aspect conceivably refer to support and maintenance, had it not been termed permanent and made a charge upon the husband's estate, and had there been no purported division of the property between the parties. As the decree stands, it can scarcely be considered as other than a "disposition of the property of the parties" under the provisions of § 20-63, supra.

■ Alimony granted as support and maintenance terminates upon the death of either of the parties. Bradley v. Superior Court, 48 Cal.2d 509, 310 P.2d 634; Greer v. Greer, 110 Colo. 92, 130 P.2d 1050, 1052; Murphy v. Shelton, 183 Wash. 180, 48 P.2d 247, 248; 27A C.J.S. Divorce § 240, pp. 1155–1156, 1158. This is not true, however, of payments which are themselves an integral part of the adjustment of property rights. Krick v. Krick, Nev., 348 P.2d 752, 754; Bradley v. Superior Court, supra; Hamilton v. Hamilton, 94 Cal.App.2d 293, 210 P.2d 750; North v. North, 339 Mo. 1226, 100 S.W.2d 582, 109 A.L.R. 1061. In the case of Bishop v. Bishop, 194 Okl. 209, 148 P.2d 472, 155 A.L.R. 604, it was held that a provision terminating payments upon remarriage of the wife was inconsistent with the award and so not permissible.

In the case of Moore v. Moore, 33 Wyo. 230, 237 P. 235, a husband's application for modification of a decree awarding alimony to his wife, because of her remarriage, was refused on the ground that the wife had made advances of money to her husband and the allowance of alimony was in the nature of a settlement thereof. In Lonabaugh v. Lonabaugh, 46 Wyo. 23, 22 P.2d 199, 201, a distinction was made between alimony as such and payments which are termed alimony but in reality constitute a property settlement. In writing the opinion Judge Riner called attention to the Maryland case of Newbold v. Newbold, 133 Md. 170, 104 A. 366, 368, where the court held that a lifetime provision for alimony did not constitute alimony as recognized by the jurisprudence of that state, inasmuch as it was regarded that alimony ceased upon the death of either of the parties. He pointed out, as a distinguishing characteristic of the case therein discussed, that the payment as ordered was enforceable even though the wife survived her husband.

■ If the provision for the wife were to be construed as being alimony in the sense of support and maintenance and terminable upon the death of either of the parties, it would be inequitable. The disparity in the amounts of the property set over is

too great and the monthly payments would be nil should the wife remarry—as the husband already has. On the other hand, if the provision is to be construed as a disposition of property or ·an adjustment of property rights, and if the alimony be permanent in a real sense, the amount which said wife could reasonably expect to receive would be such that, although not equal to that taken by the husband, it might well have been considered by the court in its discretion as being just and equitable.

■ We think that a reasonable construction of the decree shows it to have been intended as a disposition of property or a property settlement, and that the provision for termination of the $500 monthly payments upon the wife's remarriage was inconsistent therewith and accordingly must be stricken. It is ordered that the decree be modified in that regard, and as so modified, it is affirmed.

·Affirmed as modified.