**Dwight L. "Spike" SELLERS,**
**Appellant (Defendant),**

v.

**Mary Jane SELLERS,**
**Appellee (Plaintiff).**

**No. 88–157.**

Supreme Court of Wyoming.

June 22, 1989.

Frank R. Chapman, Beech Street Law Offices, Casper, for appellant.

Keith P. Tyler, Casper, for appellee.

Before CARDINE, C.J., and THOMAS, URBIGKIT, MACY and GOLDEN, JJ.

CARDINE, Chief Justice.

This is a divorce case. The husband, appellant Dwight L. "Spike" Sellers, challenges the property division made by the district court. He contends that the district court abused its discretion by

(1) awarding all of the parties' real estate to his wife;

(2) designating payments to him of $1,000 per month as "alimony" rather than "property settlement"; and

(3) failing to consider the tax consequences of the award of alimony.

We affirm in part and reverse in part.

The parties were married in 1979. Each had grown children from a previous marriage. Prior to this marriage, they executed an antenuptial agreement which provided that the parties retain their separately held property as if unmarried. The agreement also provided that they could create joint tenancies or tenancies by the entirety if desired. During the marriage, several parcels of land were acquired, along with livestock and equipment. The couple carried on a ranching operation, which consistently lost money. In 1987 the wife, Mary Jane Sellers, filed for divorce. After a trial to the court, the district court in its judgment and decree awarded to Mary Jane all of the real property jointly held by the parties, the ranch assets, and her separately held property. Dwight Sellers was awarded his separately held property, $10,000 cash, and alimony payments totalling $120,000 to be paid at the rate of $1,000 per month for ten years.

I

██ In his first argument, Dwight contends that the award of all the parties' jointly held real property to Mary Jane was a "grossly disproportionate, unjust, and inequitable division" of the parties' property. We have discussed the appellate review of property divisions on a number of occasions. When the district court disposes of property under W.S. 20-2-114, it exercises a large discretion in determining what is a just and equitable division, and the disposition will not be disturbed except on clear grounds. See, e.g., *Paul v. Paul*, 616 P.2d 707, 712 (Wyo.1980). Some of the factors which the district court should consider are:

"the respective merits of the parties and the condition in which they will be left by the divorce, the party through whom the property was acquired and the burdens imposed upon the property for the bene-

fit of either party and children." W.S. 20-2-114.

There was considerable testimony concerning difficulties in the marriage, such as drinking and physical abuse, that resulted in the parties' separation. No purpose would be served by reiterating here these circumstances which led to the filing of this divorce action. As to the condition in which the parties will be left, Dwight leaves the marriage with essentially the same separate property he had prior to the marriage.

The jointly held real estate consisted of three parcels of land, known as Corral Creek, Spruce Creek, and Iron Creek. Iron Creek and Spruce Creek were purchased during the marriage, and were titled in the names of both parties. Iron Creek is heavily mortgaged.

Mary Jane purchased Corral Creek prior to the marriage and later transferred the title into the names of both parties. Dwight now contends that he sold some of his separate real property, known as Meadow Acres, to Mary Jane's son at a price below market value in part because Mary Jane transferred the title to Corral Creek into their joint names. Dwight's own testimony at trial, however, established that the Meadow Acres transaction was not in consideration of the title change for Corral Creek. What was not disputed is that the proceeds of the sale of Dwight's property were used primarily to pay an obligation arising from the property settlement in his previous divorce.

Much of the evidence introduced at trial concerned the disparity in money contributed to the ranching operation. Mary Jane had substantial income from trusts during the marriage, and contributed in excess of $1.5 million, while Dwight contributed a total of approximately $120,000. The evidence indicates that the real property at issue here was purchased primarily, if not solely, from Mary Jane's income. Considering the factors indicated above, there was ample evidence to support the division of the real property; and there was, therefore, no abuse of discretion by the trial court in its decision.

Dwight also contends that the court must have intended to punish him by awarding the three parcels of land to Mary Jane. While he correctly states the rule that judicial discretion should not be exercised to reward one party and to punish the other, *Paul*, 616 P.2d at 712, he has identified nothing in the record which indicates that either reward or punishment was intended. He asks us to presume that punishment was intended by looking at the result alone. We discussed a similar situation in *Beckle v. Beckle*, 452 P.2d 205, 208 (Wyo.1969), saying:

"The crux of appellant's argument regarding punishment is that the trial court must have based its decree on an intent to punish defendant, as there is no other explanation for the severity of its effect upon appellant. Inasmuch as we do not accept the contention that the award to plaintiff, under all the circumstances present, was unjust or inequitable, it follows that we cannot say the effect on the husband was so severe as to denote an intent to punish him."

We do not perceive either an abuse of discretion or an intent to punish appellant by the award of the real property.

## II

Dwight's second argument is that the district court improperly designated the monthly payments of $1,000 as alimony rather than as part of the property settlement. The district court clearly has the power to award alimony:

"The court may decree to either party reasonable alimony out of the estate of the other having regard for the other's ability * * *." W.S. 20-2-114.

The pertinent provision of the decree is as follows:

"Plaintiff shall pay to Defendant the amount of $120,000.00 as alimony. Said sum shall be paid in monthly installments of $1,000.00, for a period of ten (10) years, the first monthly alimony payment being due and payable on the first day of May, 1988."

Dwight does not contend that this provision is ambiguous or erroneously drafted; rather, he asserts that the designation of the payments as alimony was an abuse of discretion.

■■■ The purpose of alimony is to provide a post-divorce substitute for the support provided to a spouse during the marriage. *Martens v. Martens*, 364 P.2d 995 (Wyo.1961). It is for the support and maintenance of a former spouse who is unable to adequately provide for themselves. Id. As such, alimony awards have some unique features. Alimony obligations may be modified upon a proper showing of a change in circumstances. W.S. 20–2–116; *Hendrickson v. Hendrickson*, 583 P.2d 1265 (Wyo.1978). Alimony payments terminate on the death of either party or on the remarriage of the payee. *Warren v. Warren*, 361 P.2d 525 (Wyo.1961).

■■■ An award of property is a preferable modern substitute for alimony. *Broadhead v. Broadhead*, 737 P.2d 731 (Wyo.1987). While in some cases alimony may be a necessity,

"under ordinary circumstances it should be recognized that one spouse should not have a perpetual claim on the earnings of the other; that divorce, insofar as possible should sever the ties of the parties and they should begin to start their lives anew." *Grosskopf v. Grosskopf*, 677 P.2d 814, 821 (Wyo.1984).

When alimony is awarded in the absence of a stipulated settlement between the parties, the record must reflect some evidence that alimony, with its special features, is needed. If the intent is to adjust the equities between the parties at the time of the divorce, property division, which may encompass a series of payments, is the preferable method. *Grosskopf*, 677 P.2d at 821.

■■■ The allowance or disallowance of alimony is a matter which lies within the discretion of the trial court. *Biggerstaff v. Biggerstaff*, 443 P.2d 524 (Wyo.1968). We have previously defined judicial discretion as

"a composite of many things, among which are conclusions drawn from objec-tive criteria; it means a sound judgment exercised with regard to what is right under the circumstances and without doing so arbitrarily or capriciously." *Martin v. State*, 720 P.2d 894, 897 (Wyo. 1986).

■■■ The objective criteria for an award of alimony include the ability of the payor spouse to pay and the necessity of support for the payee. *Hendrickson*, 583 P.2d at 1267–68; *Young v. Young*, 472 P.2d 784 (Wyo.1970). In this case, most of the evidence dealt with events occurring during the marriage. Concerning the future, there was scant evidence of either Mary Jane's ability to pay alimony or Dwight's need for support. There is insufficient evidence to determine present circumstances justifying alimony, making a later action for modification based on change in circumstances difficult. There is no indication that the equities between the parties could not be finally adjusted through property division. A finding that alimony is needed, like other findings of fact, that is rendered without sufficient evidence constitutes an abuse of discretion. *Kennedy v. Kennedy*, 761 P.2d 995 (Wyo. 1988).

■■■ Appellant urges this court to modify the decree to denominate the payments as property settlement. He cites as precedent for this type of modification our decision in *Warren v. Warren*, 361 P.2d 525 (Wyo.1961). In *Warren*, the decree was ambiguous: it called for "permanent" alimony which was to be a charge against the husband's estate (indicative of property settlement), but that the payments would terminate upon remarriage of the wife (as in alimony). This court construed the intention of the decree to be a property settlement, and modified the inconsistent provisions accordingly. *Warren*, 361 P.2d at 527–28.

We are not presented with an ambiguity in this case, and we need not resort to judicial construction. Therefore, we decline to modify the decree as appellant requests. However, based on the lack of evidence to support the award of alimony,

we vacate that portion of the decree and remand to the district court for further proceedings to determine whether alimony is warranted or if the payments should be denominated as part of the property settlement.

### III

■ Finally, appellant asserts that the district court erred by not considering the tax consequences of an alimony award. Neither party introduced any evidence relating to the tax implications of designating payments as alimony. While a district court should consider tax issues when presented by the parties, see *Dice v. Dice*, 742 P.2d 205 (Wyo.1987), it is not required to consider potential tax issues not raised by the parties. Since we remand for a determination on the alimony issue, the parties are free to introduce evidence of the effect of federal taxes if they so desire.

The provision in the judgment and decree for alimony payments is vacated and remanded for proceedings consistent with this opinion. The remainder of the judgment is affirmed.

THOMAS, Justice, concurring and dissenting.

I agree that this case must be reversed. I differ from the other members of the court in my view that it would be appropriate for this court to modify the decree to identify the award to the husband as property settlement rather than alimony. My analysis of the case causes me to conclude that, in adopting the decree proposed by the wife, the court, too casually, delegated to counsel its statutory authority and did commit an abuse of discretion in the process.

I have no difficulty with the division of property made by the district court. It seems to me, however, that there is a marked departure in the award of alimony of $1,000 a month to the husband. The markers on the trail are quite plain. In accordance with their antenuptial agreement, the parties received essentially the property they had brought into the marriage. In making the property division, the trial court gave to the wife all the property she had acquired, primarily by inheritance, subsequent to the marriage. The majority acknowledges that the husband contributed a total of approximately $120,000 to the operation of the parties' ranching business. What is interesting to me is that the trial court then required the wife to pay the husband the same amount, $120,000, but as alimony. The decree requires that the sum should be paid in installments of $1,000 a month for a period of ten years. For me, the relationship between those amounts is too direct to justify a conclusion that the purpose was really to provide a substitute for support to the husband. There is no justification for identifying these payments as alimony so far as federal income tax law is concerned. Consequently, the situation appears to me to be one in which the wife, for some puckish reason of her own, persuaded the trial court to denominate as alimony what obviously was intended to be a return to the husband of property he had contributed to the business operations of the couple during their marriage. I perceive this to constitute what the law identifies as an abuse of discretion, and I would simply modify the decree to identify that amount as property settlement rather than alimony. As the decree now stands, the husband must pay federal income tax on the amounts awarded without any apparent tax advantage to the wife.

I might add that $1,000 a month over 120 months is something less than $120,000 in current value but, in view of our established body of law that property settlements need not necessarily be equal to be equitable, there probably is no purpose to be served in quibbling over the amount. It does seem unjust to further diminish them by the tax burden, however.

I would reverse and remand with instructions to denominate the $120,000 payable at the rate of $1,000 a month as property settlement rather than alimony.