**Daniel William SWETICH, Appellant (Defendant),**

v.

**Carolyn SMITH, f/k/a Carolyn Swetich, Appellee (Plaintiff).**

**No. 90–64.**

Supreme Court of Wyoming.

Dec. 11, 1990.

Peggy Taylor Pfau of Daly, Anderson and Taylor, P.C., Gillette, for appellant.

Robert W. Connor, Jr., Sheridan, for appellee.

Before URBIGKIT, C.J., and THOMAS, CARDINE, MACY and GOLDEN, JJ.

URBIGKIT, Chief Justice.

Daniel Swetich signed a separation agreement in which he agreed to pay his wife Carolyn Smith, f/k/a Carolyn Swetich, alimony of $600 per month for ten years, with a six percent annual increase escalation factor. This negotiated separation agreement was incorporated into their divorce decree. Carolyn remarried and Daniel promptly stopped making his alimony payments. Daniel now appeals the district

court decision which indicated his agreement to pay alimony did not automatically terminate upon Carolyn's remarriage.

We affirm.

## ISSUES

Daniel, as appellant, raises two issues:

1. The district court erred in its construction of the decree in not finding that as a matter of public policy and as a matter of law, that alimony must terminate automatically upon the remarriage of a party.

2. The district court erred as a matter of law by awarding arrearages in alimony after the wife remarried.

## FACTS

In March 1982, Carolyn filed for divorce. Carolyn and Daniel signed a Stipulation and Agreement in which Daniel agreed inter alia to pay Carolyn $600 per month.[1] Their agreement made no provision for the termination of the alimony payments upon the remarriage of Carolyn or the death of either. Carolyn remarried in 1987 and Daniel quit making payments to her at that time. The district court decided that the alimony did not terminate automatically but may be terminated by the district court upon motion and after a hearing. The district court awarded $21,710.00 for alimony accruing for the period of January 1987 through October 27, 1988.[2] Daniel appeals.

## DISCUSSION

*Issue I*

Daniel asks that we construe the agreement to provide for automatic termination of alimony upon remarriage in the absence of any agreed termination provision in the agreement. His basic argument is that, traditionally, alimony ends upon remarriage as a matter of law. Daniel cites several cases which tend to support that proposition. Only recently, we indicated "[a]limony payments terminate on the death of either party or on the remarriage of the payee." *Sellers v. Sellers*, 775 P.2d 1029, 1032 (Wyo.1989) (*accord Warren v. Warren*, 361 P.2d 525 (Wyo.1961)). There was also language in *Neagle v. Neagle*, 481 P.2d 661, 663 (Wyo.1971) (*Neagle I*), which indicates "alimony payments * * * cease upon the remarriage or death of [the payee]."

While Daniel argues with some force for that proposition, another factor must be considered that the argument advanced and the cases cited by Daniel do not accommodate. Daniel's argument does not weigh the continuing jurisdiction of the district court to modify decrees, *Sellers*, 775 P.2d 1029, and the cited cases do not involve decree incorporated term payment separation agreements and do not provide any express termination on remarriage proviso.

In *Hendrickson v. Hendrickson*, 583 P.2d 1265, 1267 (Wyo.1978), we said "an award always remains open; and upon application, where conditions and circumstances have changed, the trial court can provide relief and modify the allowance." Necessarily, modification of the award for the payment of alimony is to be made by the district judge, not by a unilateral decision by the payor.

This approach is similar to that used in other jurisdictions. In *Marquardt v. Marquardt by Rempfer*, 396 N.W.2d 753 (S.D. 1986), a separation agreement incorporated by reference into the divorce decree provided for alimony payments but did not pro-

---

1. The provision provided:

    Commencing April 15, 1982, the defendant shall pay to the plaintiff in the form of alimony the sum of Six Hundred Dollars ($600.00) per month, which sum shall continue for a period of ten (10) years (One Hundred Twenty-Four (124) payments) from the above date, inclusive. On April 15, 1983, the above sum shall be increased by six percent (6%), and an additional six percent (6%) increase shall be paid on each May 15 thereafter for the entire term of ten (10) years. All increases shall be based upon the prior years' figure. Defendant shall be entitled to deduct the alimony portion of his payments as stated in this paragraph from his taxes, likewise, plaintiff shall include same as income, pursuant to Internal Revenue Service regulations.

2. A petition to modify remained pending before a different judge at the time of initiation of this appeal. Its status or disposition is not shown in this record.

vide for the termination of alimony upon remarriage of the payee. The ex-husband moved to have alimony support terminated after his ex-wife remarried. In that case, the court held that remarriage is prima facie evidence that alimony should be terminated and shifts to the payee the burden of showing extraordinary circumstances which might require continued payments of alimony. The Supreme Court of South Dakota relied upon *In re Marriage of Shima*, 360 N.W.2d 827 (Iowa 1985) for its rationale.

In *In re Marriage of Shima*, the Iowa Supreme Court indicated that while alimony did not terminate automatically upon remarriage, the burden was upon the payee to demonstrate extraordinary circumstances which could justify continued alimony payments. The Supreme Court of Iowa had relied upon *Wolter v. Wolter*, 183 Neb. 160, 158 N.W.2d 616, 619 (1968) for its rationale. In *Wolter*, the Nebraska Supreme Court held that remarriage does not automatically terminate a right to alimony but makes a prima face case which can only be overcome by a showing by the payee of extraordinary circumstances justifying a continuation of alimony.

There is also a substantial body of cases and accommodating statutes determining that termination of alimony is automatic upon remarriage. *See Voyles v. Voyles*, 644 P.2d 847 (Alaska 1982); *Myers v. Myers*, 62 Utah 90, 218 P. 123 (1923); Ala. Code § 30-2-55 (1989); Cal.Civ.Code § 4801(b) (West 1983 & Cum.Supp.1990); Colo.Rev.Stat. § 14-10-122(2) (1987 & Cum.Supp.1990); Del.Code Ann. tit. 13, § 1519(b) (1981); Nev.Rev.Stat. § 125.150.5 (Cum.Supp.1989); and N.Y.Dom.Rel.Law § 248 (McKinney 1986). *See also Kuhns' Estate v. Kuhns*, 550 P.2d 816 (Alaska 1976) (death case) and *Cecil v. Cecil*, 11 Utah 2d 155, 356 P.2d 279 (1960). See the conflict within reported cases detailed in

Annotation, *Alimony as Affected by Wife's Remarriage, In Absence of Controlling Specific Statute*, 48 A.L.R.2d 270 (1956) and later case service.

Resolution of this case will be confined to its factual content. It presents an agreement for periodic alimony payments with a stated term and no remarriage termination condition.[3] We need not write an all inclusive rule for nonagreement cases to decide this case where the agreement of the parties initially created the obligation. *Dorr v. Newman*, 785 P.2d 1172 (Wyo. 1990). Since the agreement and the decree into which it was incorporated made no provision for automatic termination where each document contained a term period for alimony payment, the remedy available to the alimony obligor is reserved to a petition to modify the decree. *Sellers*, 775 P.2d 1029; *Buchler v. Buchler*, 65 Wyo. 452, 202 P.2d 670 (1949). Remarriage could be a change of circumstance, but it does not automatically cancel the obligation provided in the decree without amendatory court action.[4] *Beck v. Beck*, 208 Kan. 148, 490 P.2d 628 (1971).

Daniel argues expressively that a different result is required because of an income tax provision which was included in the original decree:

"Defendant shall be entitled to deduct the alimony portion of his payments as stated in this paragraph from his taxes, likewise, plaintiff shall include same as income, pursuant to Internal Revenue Service regulations."

The argument presented is to recognize that under IRS regulations, the payment might not be properly deductible as alimony unless the contingencies of death or remarriage existed concurrently with the decree-established payment obligation. This court will not determine tax deductibility in order to imply into an agreement a

---

3. In addition to the non-inclusion of a remarriage provision, the agreement lacked any death clause, e.g., to early terminate upon remarriage or the death of either party. Also absent was any non-modification provision. *See In re Marriage of Sherman*, 162 Cal.App.3d 1132, 208 Cal. Rptr. 832 (1984) and *Driscoll v. O'Reilly*, 486 So.2d 693 (Fla.App.1986).

4. We specifically do not determine whether automatic termination occurs where there is a defining provision in an agreement between the divorcing parties or if there was no agreement and no provision stated in the initial decree. See, for example, *Daniel v. Baker*, 794 P.2d 345 (Nev.1990).

termination provision that had not been written by the parties. *Dorr*, 785 P.2d 1172.

We are satisfied that in this case the argument by Daniel has no merit. In his brief, Daniel quotes from the Code of Federal Regulations the following:

> Where payments under a decree, instrument, or agreement are to be paid over a period ending 10 years or less from the date of such decree, instrument, or agreement, such payments are not installment payments * * * (and are considered periodic payments for the purposes of section 71(a)) only if such payments meet the following two conditions:
>
> (a) Such payments are subject to any one or more of the contingencies of death of either spouse, remarriage of the wife, or change in the economic status of either spouse, and
>
> (b) Such payments are in the nature of alimony or an allowance for support.

IRC and Treas.Regs. § 1.71–1(d)(3)(i) (Matthew Bender 1990). Daniel goes on to state in his brief that "[t]he parties had already modified it once based on economic changes of Mr. Swetich when he lost his job."

Daniel's expressed concern is that because the payments to Carolyn were not automatically stopped by her remarriage then they could not be deducted by him in computing his federal income tax liability. The requirements of subparagraph (a) of the foregoing regulation clearly are expressed in the alternative, and it seems to be the law of this case that a "change in the economic status of either spouse" has been recognized as a contingency to which the required payments are subject. Consequently, the judgment of the district court should not in any way inhibit the income tax deductibility of these alimony payments.

We hold that modification of the alimony decree in this case was not automatically accomplished without district court petition upon remarriage of the spouse.

**5.** "Since the alimony terminated automatically upon remarriage of Appellee, there can be no

*Issue II*

Daniel's second issue begins with the assumption that he prevailed on the first issue.[5] Because Daniel did not prevail on the first issue, the argument behind the second issue is without force.

## CONCLUSION

For the reasons advanced, the district court is affirmed.

Judgment entered for amounts past due."