Maxine OEDEKOVEN, Appellant (Plaintiff),

v.

John Gilbert OEDEKOVEN, Personal Representative of the Estate of Charles Robert Oedekoven, Deceased, Appellee (Defendant).

No. 95–215.

Supreme Court of Wyoming.

June 27, 1996.

Tom C. Toner of Yonkee & Toner, Sheridan, for appellant.

James P. Schermetzler, Gillette, Philip White, Jr., Laramie, for appellee.

Before GOLDEN, C.J., and THOMAS, MACY, TAYLOR, and LEHMAN, JJ.

GOLDEN, Chief Justice.

Maxine Oedekoven appeals an order granting summary judgment in favor of the personal representative of her ex-husband's estate. The district court held that alimony

1. Charles argues that this Court should not consider Maxine's second issue concerning a trust agreement. Maxine presented some evidence that a trust was established; however, the trust presented into evidence was not signed by

payments do not continue after the death of the payor spouse.

We reverse.

## ISSUES

Appellant Maxine Oedekoven (Maxine) presents the following issues for our review:

1. When a divorce decree provides that a husband will pay the wife an annual payment as alimony "which will last for her life time," does the wife's right to alimony terminate on the husband's death?

2. Is there a genuine issue of material fact as to whether Charles Oedekoven established a trust for the benefit of Maxine Oedekoven which would terminate only on her death and under which she was to receive annual payments of $20,000 during her life?

Appellee, the estate of Charles Oedekoven (estate or Charles), presents a single issue:

Is the Estate of Charles Oedekoven responsible for paying Plaintiff [Maxine] $20,000 per year in alimony (minus her Social Security benefits) for the rest of her life under terms of the divorce decree in this case? [1]

## FACTS

Maxine and Charles Oedekoven were divorced on August 8, 1983. The terms of the divorce decree which are relevant to this case read:

IT IS FURTHER ORDERED, that the plaintiff [Charles] will pay the sum of $20,000.00 per year to the defendant [Maxine] as alimony which will last for her life time. Such payments shall be reduced as soon as the defendant starts to receive social security benefits by the amount of the social security benefits that she receives. Further, the alimony payments shall be secured by a pledge of assets and security agreement or such other security [de]vice including a trust as the parties may agree.

Charles. The district court did not address the trust issue in its decision letter or order. Fortunately, we are able to resolve this case without relying on the existence or non-existence of the alleged trust agreement.

Charles died on July 28, 1994, and John Gilbert Oedekoven was appointed as the personal representative of the estate. Maxine filed the appropriate creditor's claim to maintain her alimony payments. On December 13, 1994, the estate rejected Maxine's claim. Maxine filed a complaint on December 29, 1994, asking the district court to determine that she was entitled to $20,000 in alimony each year until her death, and for other relief which is not relevant to this appeal.

Both parties filed motions for summary judgment, submitting briefs and supporting documents with their motions. After further briefing in response to the respective motions and a hearing on the motions for summary judgment, the district court issued a decision letter on June 16, 1995. The decision letter stated, in pertinent part:

2. On the issue of the duration of the alimony, the court will find for the defendant [Charles] and against the plaintiff [Maxine]. On this issue, it appears that Wyoming follows the general rule of law that when alimony is granted as support and maintenance, it terminates upon the death of either party. *Warren v. Warren*, 361 P.2d 525, 527 (Wyo.1961). In the *Warren* case, the spouse was awarded permanent alimony for as long as she should live or until she remarried, and the alimony was made a charge against the husband's estate. Based upon the evidence in that case, the court found that this was not alimony, but rather a "disposition of the property of the parties."

The $20,000.00 awarded by the judge in the Oedekoven divorce case was called alimony and appeared to be for support and maintenance, particularly since it was to be reduced upon receipt by the wife of social security payments. It is also evidence that it was only for support and maintenance because it was to terminate upon the death of the wife. What was left out of the decree, potentially, is whether this was binding on the husband's estate, should he die. The decree is silent in that area. In examining Wyoming law, Wyoming may be in the category that does not give the judge the power to order alimony to continue after death of the payor. In *Spitzer*

*v. Spitzer*, 777 P.2d 587, 594 (Wyo.1989), the lower court awarded alimony of $600,-000.00 payable at the rate of $5,000.00 per month, continuing as an obligation on the husband, his executor, trustee or successor after husband's death. The court also had ordered that this $600,000.00 was "as and for alimony, and not for property settlement". When the Supreme Court reviewed this action by the lower court it made this comment: "Upon remand, however, if the district court makes a similar award intending it to be alimony, the provision should be designed to terminate upon the death of either party in order to be effective as intended and to avoid further contest as to its operation. We also note, as another reason to avoid any ambiguity, that certain tax consequences flow from the construction of such provision by the Internal Revenue Service." Those tax consequences were taken into consideration by the parties in the Oedekovn [sic] case. Each had treated it as alimony for purposes of their individual income tax.

Even if Wyoming goes beyond the strict position not allowing alimony to continue after death, the court finds instructive the cases that require this to be done in clear and unmistakable language. *Murphy v. Shelton*, 183 Wash. 180, 48 P.2d 247, 248 (1935), cited by the Wyoming Supreme Court in *Warren v. Warren, Supra; Bird v. Henke*, 65 Wash.2d 79, 395 P.2d 751 (1964). The specific and clear language binding upon the estate of the husband in this case is absent from the divorce decree.

On June 29, 1995, the district court entered its order for summary judgment and this appeal followed.

## DISCUSSION

The precise issue in this case, whether alimony payments continue after the death of the payor spouse, is an issue of first impression for this Court. Although several of our cases have remarked that alimony terminates upon the death of either spouse, the question has not been directly at issue, nor has it been seriously analyzed in the context of this case. *See Warren v. Warren*, 361 P.2d 525, 527–28 (Wyo.1961) (Although

award was labeled alimony in the decree, court intended it to be a distribution of property, not alimony. Division of property was not just and equitable if award was alimony and terminated upon remarriage of wife.); *Sellers v. Sellers*, 775 P.2d 1029, 1031–32 (Wyo.1989) (Record did not support award of alimony. Alimony has some unique features which were not appropriate in this case.); *Spitzer v. Spitzer*, 777 P.2d 587, 594 (Wyo. 1989) (District court improperly entered a default judgment, granting alimony and property distribution without an evidentiary hearing. Relies on *Warren* to hold that if award is intended to be alimony, it must be designed to terminate upon the death of either party to be effective as intended.)

At common law, the obligation to pay alimony was regarded as a personal one which terminated upon the death of either spouse. *Murphy v. Shelton*, 183 Wash. 180, 48 P.2d 247, 248 (1935). However, this rule has been modified by statute in many states so that now, where the statute allows the court to modify the alimony award, the court has the power to provide in its decree that alimony shall continue after the death of the obligor and be payable out of his estate. *Id.* "[I]f the court exercises such power, the provision for continuance of such payments after death must either be specifically stated in the decree, or else its language must be so clear and unmistakable as to indicate that the court intended that the decree should have that effect." *Id.* "There is some diversity of opinion in the cases as to the degree of certainty that must appear in the decree itself. . . ." *Id.*

WYO. STAT. § 20–2–116 (1994)[2] gives the district court which issues the divorce decree continuing jurisdiction to modify the decree. In *Swetich v. Smith*, 802 P.2d 869, 870 (Wyo. 1990), we noted that *Sellers* and *Warren* indicated "alimony payments terminate on the death of either party or on the remarriage of the payee." However, we then determined that a payor is not allowed to stop making alimony payments upon remarriage of the payee unless the decree so provides.

*Id.* at 871. We based our decision on the court's ability to modify the decree.

In *Hendrickson v. Hendrickson,* 583 P.2d 1265, 1267 (Wyo.1978), we said "an award always remains open; and upon application, where conditions and circumstances have changed, the trial court can provide relief and modify the allowance." Necessarily, modification of the award for the payment of alimony is to be made by the district judge, not by a unilateral decision by the payor. *Swetich,* 802 P.2d at 870. "[T]he remedy available to the alimony obligor is reserved to a petition to modify the decree." *Id.* at 871. In other words, *Swetich* held that WYO. STAT. § 20–2–116, allowing the court to modify the decree, changed the common law rule concerning alimony payments after remarriage of the payee spouse.

■ *Warren, Sellers,* and *Spitzer* appear to have relied on the common law rule when they indicated that alimony terminates upon the death of either of the parties. However, we were able to resolve those cases without determining whether there may be circumstances in which the decree was intended to continue alimony payments after the death of the payor. In *Warren* and *Spitzer,* the issue presented to the court was whether an award was intended to be, and therefore should be designated as, alimony or a property distribution. *Warren,* 361 P.2d at 527; *Spitzer,* 777 P.2d at 594. *Sellers* merely determined that the evidence in the record did not support an alimony award. *Sellers,* 775 P.2d at 1032–33. Therefore, we hold that WYO. STAT. § 20–2–116 (1994) changed the common law rule concerning alimony payments after the death of the payor spouse. *See Murphy,* 48 P.2d at 248.

■ Now we must determine whether the decree in this case was intended to require continued alimony payments to Maxine after Charles' death.

Although it has been held that the award of alimony should be made only during the joint lives of the parties, and that the court

---

**2.** The court had this power in 1983, the year the decree in this case was issued. 1977 Wyo. Sess. Laws Ch. 152 § 1.

cannot without the consent or agreement of the parties provide for the continuance of alimony after the death of either party, statutes may provide for the continuance of alimony after the paying spouse's death, and the courts generally have the power, in many cases under statutes, so to provide. Where such power exists, alimony will continue after the death of the paying spouse where the decree expressly so provides, or it clearly appears that the court intended that the decree should have that effect, but in the absence of such express provision or clear intention the decree will not have such effect.

In order for a decree to expressly provide for maintenance subsequent to the obligor's death, it has been held that the decree must provide funding for such maintenance such as an insurance policy or a lien on property.

27B C.J.S. *Divorce* § 374 (1986).

The Oedekoven decree states:

IT IS FURTHER ORDERED, that the plaintiff [Charles] will pay the sum of $20,-000.00 per year to the defendant [Maxine] as alimony which will last for her life time. Such payments shall be reduced as soon as the defendant starts to receive social security benefits by the amount of the social security benefits that she receives. Further, the alimony payments shall be secured by a pledge of assets and security agreement or such other security [de]vice including a trust as the parties may agree.

The decree clearly states that the alimony "will last for her [Maxine's] life time." It also provides funding for the alimony through a pledge of assets and security agreement or other security device. We hold that the trial court erred when it found that "specific and clear language binding upon the estate of the husband in this case is absent from the divorce decree."

██ Finally, the estate appears to argue that since Maxine cannot prove that a trust agreement between Maxine and Charles exists and Charles did not provide for any other security in accordance with the terms of the decree, the estate is excused from providing continued alimony payments. However, the decree required Charles to es-

tablish some security device to ensure continued payment. Charles' estate may not benefit from Charles' failure to follow the terms of the court ordered decree.

## CONCLUSION

According to the clearly expressed intent of the divorce decree, Maxine is entitled to continued alimony payments for her life time. The decision of the district court is reversed and remanded for action consistent with this opinion.