2004 WY 62

**Henry Earl MAHER, Appellant (Plaintiff),**

v.

**Marlene Louise MAHER, n/k/a Marlene Louise Lawson, Appellee (Defendant).**

**No. 03–181.**

Supreme Court of Wyoming.

May 27, 2004.

Representing Appellant: Deborah Ford Mincer of The Mincer Law Firm, Cheyenne, WY.

Representing Appellee: Carol A. Serelson, Cheyenne, WY.

Before HILL, C.J., and GOLDEN, LEHMAN, KITE, and VOIGT, JJ.

LEHMAN, Justice.

[¶ 1] Appellant Henry Maher (Maher) appeals the denial of his petition to terminate the alimony payments he is required to make to his former wife, appellee Marlene Lawson (Lawson). The alimony payments are required pursuant to an agreement entered into between the parties and incorporated into their divorce decree. Maher sought to terminate the alimony payments upon his former wife's remarriage. We affirm.

## ISSUES

[¶ 2] Maher sets forth the following issues:

I. Whether the trial judge erred under *Swetich v. [Smith,* 802 P.2d 869 (Wyo. 1990),] when the recipient of alimony, upon her remarriage, was required to bear no burden of proof as to a continuing need for alimony?

II. Whether the trial judge erred when he decided a settlement agreement required that he deny a motion to terminate alimony?

III. In the alternative, whether the trial judge abused his discretion in ruling that the motion to terminate alimony should be denied?

Lawson phrases the issues on appeal as:

A. Whether the trial court properly required Appellant to prove a substantial change of circumstances to justify a modification or termination of alimony?

B. Whether the trial court properly weighed the written agreement of the parties in denying the motion to terminate alimony?

C. Whether the trial court's denial of Appellant's motion to terminate alimony is warranted by the facts of this case and is not an abuse of discretion?

D. Whether this Court will certify that there is no reasonable cause for this appeal and award sanctions against Appellant?

## FACTS

[¶ 3] On May 7, 1998, after almost twenty-five years of marriage, Maher filed for divorce from Lawson. The parties entered into a Property Settlement Agreement prepared by Maher's attorney on May 22, 1998. The agreement provided, in applicable part:

9. The Husband [Maher] shall pay spousal maintenance/alimony to the Wife

[Lawson] in the amount of $1,739.00 per month, beginning on the fifteenth (15th) day of June, 1998, and continuing until September of the year 2008 when the parties' current mortgage is paid off.

At the time the parties' mortgage is paid in full, Husband's spousal maintenance/alimony payments shall be reduced by Nine Hundred Nineteen Dollars and Ninety Two Cents ($919.02), which equals the amount of the parties' current principal and interest mortgage payment. Said amount shall then be paid until September of the year of 2012.

At such time as child support ceases, Husband's spousal maintenance/alimony payment shall increase by the amount of child support, $661.00, in the month after the last child support payment was paid.

In the event that Wife obtains better paying employment, or receives a pay increase of any sort, Husband's alimony payment will be reduced by fifty percent (50%) of Wife's pay increase. In the event Husband receives pay raises, his spousal maintenance/alimony payment shall be increased to, and calculated at, fifty percent (50%) of his net monthly income.

In the event Husband serves on Active Duty for the United States Marine Corps Reserve, he shall pay fifty percent (50%) of any net amount earned, for that service, over and above the net amount earned for his civilian employment, to Wife as additional spousal maintenance/alimony. Any travel . expenses and perdiem [sic] payments associated with said Active Duty will be retained exclusively by the Husband.

The agreement also included an acknowledgment that the parties had the opportunity to retain separate counsel prior to execution of the agreement. Although the parties considered including a clause within the agreement that would end alimony upon remarriage, the parties could not agree on that clause and it was left out of the agreement. Further, Maher signed and filed a statement under oath indicating that the form of decree of

divorce was fair and equitable to both parties. The agreement was then filed with the district court, and the district court entered a decree of divorce on July 7, 1998, incorporating the agreement.

[¶ 4] Maher remarried in November 1999, and Lawson remarried in March 2000. On July 18, 2000, Maher filed his Petition for Termination of Alimony, which was initially heard before a district court commissioner. Upon the recommendation of the district court commissioner, the district court formally denied Maher's petition. Thereafter, the district court granted Maher's Motion for Relief from Judgment filed pursuant to W.R.C.P. 60(b).[1]

[¶ 5] A trial was then held before the district court on Maher's original Petition for Termination of Alimony. Ultimately, the district court denied the petition on June 9, 2003, finding that Maher had failed to show a material and substantial change of circumstances.

## STANDARD OF REVIEW

[¶ 6] A trial court's conclusions of law are not binding on this court and are reviewed *de novo*. *Pagel v. Franscell*, 2002 WY 169, ¶ 7, 57 P.3d 1226, ¶ 7 (Wyo.2002); *Maycock v. Maycock*, 2001 WY 103, ¶ 12, 33 P.3d 1114, ¶ 11 (Wyo.2001). The standard we apply in reviewing cases asserting an abuse of discretion by the trial court is whether the trial court reasonably could have concluded as it did. *Ready v. Ready*, 2003 WY 121, ¶ 11, 76 P.3d 836, ¶ 11 (Wyo.2003); *Rude v. State*, 851 P.2d 20, 23 (Wyo.1993); *Parry v. Parry*, 766 P.2d 1168, 1171 (Wyo. 1989).

## DISCUSSION

### Questions of Law

[¶ 7] In his first two issues on appeal Maher, in essence, claims that the district court erred as a matter of law when it denied his petition to terminate alimony. According to Maher, the case of *Swetich v.*

1. This motion also included a Motion to Terminate Alimony and Motion to Rescind the Proper-
ty Settlement Agreement.

*Smith,* 802 P.2d 869 (Wyo.1990), citing the cases of *Marquardt v. Marquardt by Rempfer,* 396 N.W.2d 753 (S.D.1986) and *In re Marriage of Shima,* 360 N.W.2d 827 (Iowa 1985), stands for the proposition that upon the filing of a motion to terminate alimony based on remarriage, the spouse receiving alimony has the burden of showing that extraordinary circumstances exist which justify the payment of continued alimony. We do not agree.

[¶ 8] While it is true that the *Marquardt* and *In re Marriage of Shima* cases may support the argument espoused by Maher, this court cited those cases only as authority showing that remarriage *could be* considered a sufficient change of circumstances to terminate alimony, but that it did not automatically terminate alimony payments without amendatory court action. As stated in *Swetich,* at 870–71:

> Daniel asks that we construe the agreement to provide for automatic termination of alimony upon remarriage in the absence of any agreed termination provision in the agreement. His basic argument is that, traditionally, alimony ends upon remarriage as a matter of law. Daniel cites several cases which tend to support that proposition. Only recently, we indicated "[a]limony payments terminate on the death of either party or on the remarriage of the payee." *Sellers v. Sellers,* 775 P.2d 1029, 1032 (Wyo.1989) (accord *Warren v. Warren,* 361 P.2d 525 (Wyo.1961)). There was also language in *Neagle v. Neagle,* 481 P.2d 661, 663 (Wyo.1971) (*Neagle I* ), which indicates "alimony payments ... cease upon the remarriage or death of [the payee]."

> While Daniel argues with some force for that proposition, another factor must be considered that the argument advanced and the cases cited by Daniel do not accommodate. Daniel's argument does not weigh the continuing jurisdiction of the district court to modify decrees, *Sellers,* 775 P.2d 1029, and the cited cases do not involve decree incorporated term payment separation agreements and do not provide any express termination on remarriage proviso.

In *Hendrickson v. Hendrickson,* 583 P.2d 1265, 1267 (Wyo.1978), we said "an award always remains open; and upon application, where conditions and circumstances have changed, the trial court can provide relief and modify the allowance." Necessarily, modification of the award for the payment of alimony is to be made by the district judge, not by a unilateral decision by the payor.

This approach is similar to that used in other jurisdictions. In *Marquardt v. Marquardt by Rempfer,* 396 N.W.2d 753 (S.D. 1986), a separation agreement incorporated by reference into the divorce decree provided for alimony payments but did not provide for the termination of alimony upon remarriage of the payee. The ex-husband moved to have alimony support terminated after his ex-wife remarried. In that case, the court held that remarriage is prima facie evidence that alimony should be terminated and shifts to the payee the burden of showing extraordinary circumstances which might require continued payments of alimony. The Supreme Court of South Dakota relied upon *In re Marriage of Shima,* 360 N.W.2d 827 (Iowa 1985) for its rationale.

In *In re Marriage of Shima,* the Iowa Supreme Court indicated that while alimony did not terminate automatically upon remarriage, the burden was upon the payee to demonstrate extraordinary circumstances which could justify continued alimony payments. The Supreme Court of Iowa had relied upon *Wolter v. Wolter,* 183 Neb. 160, 158 N.W.2d 616, 619 (1968) for its rationale. In *Wolter,* the Nebraska Supreme Court held that remarriage does not automatically terminate a right to alimony but makes a prima facie case which can only be overcome by a showing by the payee of extraordinary circumstances justifying a continuation of alimony.

There is also a substantial body of cases and accommodating statutes determining that termination of alimony is automatic upon remarriage. See *Voyles v. Voyles,* 644 P.2d 847 (Alaska 1982); *Myers v. Myers,* 62 Utah 90, 218 P. 123 (1923); Ala.Code § 30–2–55 (1989); Cal.Civ.Code

§ 4801(b) (West 1983 & Cum.Supp.1990); Colo.Rev.Stat. § 14–10–122(2) (1987 & Cum.Supp.1990); Del.Code Ann. tit. 13, § 1519(b) (1981); Nev.Rev.Stat. § 125.150.5 (Cum.Supp.1989); and N.Y.Dom.Rel.Law § 248 (McKinney 1986). See also *Kuhns' Estate v. Kuhns*, 550 P.2d 816 (Alaska 1976) (death case) and *Cecil v. Cecil*, 11 Utah 2d 155, 356 P.2d 279 (1960). See the conflict within reported cases detailed in Annotation, *Alimony as Affected by Wife's Remarriage, In Absence of Controlling Specific Statute*, 48 A.L.R.2d 270 (1956) and later case service.

However, this court further noted at 871–72:

> *Resolution of this case will be confined to its factual content.* It presents an agreement for periodic alimony payments with a stated term and no remarriage termination condition. We need not write an all inclusive rule for nonagreement cases to decide this case where the agreement of the parties initially created the obligation. *Dorr v. Newman*, 785 P.2d 1172 (Wyo.1990). *Since the agreement and the decree into which it was incorporated made no provision for automatic termination where each document contained a term period for alimony payment, the remedy available to the alimony obligor is reserved to a petition to modify the decree.* *Sellers*, 775 P.2d 1029; *Buchler v. Buchler*, 65 Wyo. 452, 202 P.2d 670 (1949). *Remarriage could be a change of circumstance, but it does not automatically cancel the obligation provided in the decree without amendatory court action.* *Beck v. Beck*, 208 Kan. 148, 490 P.2d 628 (1971).
>
> . . .
>
> We hold that modification of the alimony decree in this case was not automatically accomplished without district court petition upon remarriage of the spouse.

(Emphasis added and footnotes omitted.)

[¶ 9] Furthermore, it is critical to note that Wyoming's statutory scheme is different than the statutory schemes of the jurisdictions cited within the *Swetich* opinion. Specifically, Wyo. Stat. Ann. § 20–2–116 (LexisNexis 2003) provides that after a decree for alimony is entered, the court may from time to time, on the petition of either of the parties, revise and alter the decree respecting the amount of alimony. This statute does not specify that termination of alimony is automatic upon remarriage. Moreover, both prior to and following the issuance of the *Swetich* opinion, this court has clarified that a party seeking modification of alimony must establish that there has been a material and substantial change of circumstances which outweighs the interest of society in applying the doctrine of *res judicata*. *Ready v. Ready*, at ¶ 11; *Pasenelli v. Pasenelli*, 2002 WY 159, ¶ 9, 57 P.3d 324, ¶ 9 (Wyo.2002); *Crawford v. Crawford*, 828 P.2d 1192, 1194 (Wyo.1992); *Mentock v. Mentock*, 638 P.2d 156, 158 (Wyo.1981). Likewise, we recognized in *Ready v. Ready*, at ¶ 21 (citing *Dorr v. Newman*, 785 P.2d 1172, 1178 (Wyo. 1990)), that the party seeking the termination of alimony must demonstrate that there has been a substantial change of circumstances from the time of the divorce to the time of the petition to modify. Thus, we hold that the district court did not err as a matter of law by requiring Maher to bear the burden of proving that there had been a material and substantial change of circumstances.

[¶ 10] In addition, Maher asserts that the district court erred when it found that the Property Settlement Agreement, in and of itself, required that the district court deny his petition to terminate alimony. In support of this argument, Maher cites *Pauling v. Pauling*, 837 P.2d 1073, 1078 (Wyo.1992), which details that when, in the absence of clear and convincing evidence to the contrary, the agreement is presumed to merge into the decree and will no longer be given effect.

[¶ 11] Upon review of the record, it is clear that the district court used the language within the agreement, which was incorporated into the divorce decree, as one of many factors in making its determination. Indeed, the district court properly recognized that alimony can be modified even if it is established by agreement, citing *Dorr v. Newman*. This court has further established that although not separately dispositive, there must be significance attached to the

separation agreement when modification is considered as contrasted with a court-imposed payment responsibility which was not voluntarily assumed by the prior marital partner. *Johnson v. Johnson,* 717 P.2d 335, 340 (Wyo.1986). Accordingly, we do not find Maher's argument to be persuasive.

### Abuse of Discretion

■ [¶ 12] In the alternative, Maher submits that the district court abused its discretion when it denied his petition to terminate alimony. Review of the district court's detailed decision letter indicates that the district court's determination was based on a number of criteria. Specifically, the district court considered the remarriage and Maher's changed financial circumstances, including the fact that Maher had incurred additional debt since the divorce. Nevertheless, the district court noted that Maher had incurred much, if not all, of that debt voluntarily. In particular, the district court stated:

> The other principal change urged by [Maher] involves his current earning and spending capacity. He specifically argues that his current home involves a huge mortgage payment and that in addition he is also helping an adult son to the degree that he probably spends $200 or perhaps more in a given month. The evidence was that after settlement of the divorce, Mr. Maher took a job in the area of Chicago, Illinois for the same company and for somewhat more money. However, more money didn't go as far as he anticipated it would in Chicago, though he was able to buy a home and eventually remarried there. It was uncontroverted, however, that while he had a home, he built a larger one, obtaining a commensurately larger loan with his new wife which doubled the amount of his existing mortgage, clearly a voluntary choice. In addition, his monthly obligation is dramatically higher because he sought, for financial planning reasons, a 15–year mortgage. Again, smart financial planning on his part, but not something that this Court could consider as anything other than the voluntary acquisition or assumption of significant debt which cannot be considered a change of circumstances. *Goody v. Goody,* 939 P.2d 731 (Wyo.1997).

*See also, Johnson v. Johnson,* 717 P.2d 335 (Wyo.1986).

The evidence of financial assistance to an adult stepson was also appropriate from [Maher's] point of view and something the Court notes as admirable, but not of the kind and nature of expense that this Court can consider as a change of circumstances.

[¶ 13] The district court further recognized that the settlement agreement included provisions for adjustment of alimony based on 1) changes in Maher's and Lawson's income, 2) when child support ceased, 3) the parties' mortgage was paid in full, and 4) the event that Mr. Maher became activated in the military. Additionally, the district court pointed out that the settlement agreement even specified that any travel expenses and per diem regarding Maher's military service would be exclusively retained by Maher and that alimony, in any event, would terminate on a date certain apparently simultaneous with Maher's anticipated military retirement. Thus, the district court concluded the parties' settlement agreement spoke to long-term planning over a period of years and to what money would flow post-divorce from Maher to Lawson. Hence, the district court gave the agreement significant weight in making its determination. Moreover, the district court considered that the parties had contemplated a remarriage clause in the settlement agreement, but the parties did not ultimately include it.

[¶ 14] The district court, after balancing each of these elements, concluded that:

> Here the specific details in the agreement and resulting decree convince the Court that [Lawson's] remarriage is not a substantial change of circumstances that outweighs the interests of the law in the principal of *res judicata.* In addition, even considering the financial burden of [Maher's] unanticipated financial situation, to a large degree most if not all of that additional burden has been voluntarily acquired. His income simply not going as far in Illinois as it did here was not, under the evidence presented, a substantial change all by itself, and in fact it was an

anticipated move on or about the time of the settlement agreement.

[¶ 15] Upon our review of the record and the district court's reasoning, we cannot conclude that the district court abused its discretion in denying Maher's petition to terminate alimony. To the contrary, the district court's decision appears to be well reasoned and within Wyoming's established law on this issue.

[¶ 16] Furthermore, we find no merit in Maher's effort to convince this court that under our holding in *Jones v. Jones*, 858 P.2d 289 (Wyo.1993), his unrealized belief that he would receive sufficient earnings to cover both his living expenses and the alimony payments upon moving to Illinois constitutes a failed expectation that supports his claim that a substantial change in circumstances occurred. Maher knew at the time he entered into the settlement agreement what his income would be when he moved to Illinois. Maher also testified that his income increased every year since the divorce. Moreover, Maher voluntarily chose to assume a nearly $300,000 debt after filing his petition to terminate alimony, assuming that he would be successful in his attempt to terminate his alimony obligation which would then enable him to afford his new higher mortgage payment. In *Jones,* Mr. Jones anticipated that his back injury would heal enough that he would be able to pursue higher paying employment and pay his obligations. However, Mr. Jones was precluded from doing so because *through no fault of his own,* his back did not heal as anticipated. Under these facts, we held there was sufficient basis for modifying Mr. Jones' obligation. Maher's situation is obviously far different from the circumstances that existed in *Jones* as Maher's alleged predicament was self-induced and knowingly assumed.

[¶ 17] Additionally we are not persuaded by Maher's last-ditch effort arguing that the settlement agreement should be set aside as unfair. As noted earlier, the parties entered into the settlement agreement on May 22, 1998. Detailed negotiations took place in the development of the language that was ultimately contained in the agreement. Although the parties considered including within the agreement a clause that would end alimony upon remarriage, the parties could never agree on the form of that clause and it was left out of the agreement. Further, the agreement contained an acknowledgment that the parties had the opportunity to retain separate counsel prior to its execution. Thus, Maher cannot now infer that counsel who prepared the settlement agreement did not look out for his best interests. The settlement agreement was eventually incorporated into the divorce decree. Maher signed and filed a statement under oath indicating that the decree was fair and equitable to both parties. Apparently Maher abided with the terms of the decree of divorce thereafter. Consequently we find Maher's argument unconvincing.

## Imposition of Sanctions

[¶ 18] Lawson asks that we impose sanctions against Maher in this case pursuant to W.R.A.P. 10.05. Although we affirm the actions of the district court, we decline to impose sanctions. Maher's brief was not so lacking in cogent argument or pertinent authority that it constituted that rare circumstance where sanctions are appropriate. *See Estate of McLean ex rel. Hall v. Benson,* 2003 WY 78, ¶ 12, 71 P.3d 750, ¶ 12 (Wyo. 2003).

## CONCLUSION

[¶ 19] We affirm the district court's denial of Maher's petition to terminate alimony for those reasons stated. In addition, we deny Lawson's request that we levy sanctions against Maher on appeal.